IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:

NATIONAL FORGE COMPANY, <u>et al.</u>,

Debtor.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF NATIONAL FORGE
COMPANY,

                                        Civil No. 04-21 Erie

Plaintiff,

and

OFFICIAL COMMITTEE OF RETIREES
OF NATIONAL FORGE COMPANY,

Intervenors,

v.

E. ROGER CLARK, both Individually and as
an Officer and Director of National Forge
Company, <u>et al.</u>,

Defendants.

APPENDIX IN SUPPORT OF DEFENDANTS E. ROGER CLARK,
MAURICE J. CASHMAN, DANA BEYELER AND
ROBERT A. KAEMMERER'S MOTION FOR SUMMARY JUDGMENT
AS TO COUNTS I THROUGH VII OF THE AMENDED COMPLAINT

Douglas A. Campbell
PA I.D. No. 23143
Erik Sobkiewicz
PA I.D. No. 56836
CAMPBELL & LEVINE, LLC
1700 Grant Building
Pittsburgh, PA 15219
Telephone: (412) 261-0310
Counsel for Defendants E. Roger Clark,
Maurice J. Cashman, Dana Beyeler
and Robert A. Kaemmerer

Table of Contents

Exhibit

Declaration of Maurice J. Cashman ......................................................................... A

National Forge Company Holdings, Inc.'s Restated
Articles of Incorporation Dated June 29, 1995 ....................................................... A-1

Amendment No. 1 to the Amended and Restated
Credit Agreement, dated April 6, 1999 .................................................................. A-2

Chase Account No. 530-043912 Statement of National Forge Company
for the period April 1 through April 30, 1999 ........................................................ A-3

Chase Account No. 530-543648 Statement of National Forge
Company Holdings, Inc. for the period April 1 through April 30, 1999 ................ A-4

Copies of Checks Issued by National Forge Company Holdings, Inc. ................... A-5

Presentation to National Forge Company
Holdings, Inc.'s Board of Directors ...................................................................... B

December 22, 1998 Resolution of Board of Directors
Of National Forge Company Holdings, Inc. .......................................................... C

December 14, 1998 Letter from
Valuemetrics, Inc. to Messrs. Clark and Cashman ................................................ D

National Forge Company Holdings, Inc.'s
Business Valuation as of June 30, 1999.................................................................. E

Materials for November 5, 1999 Meeting of
National Forge Company Holdings, Inc.'s Board of Directors ................................ F

Exhibit A
Declaration of Maurice J. Cashman

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

In re:

NATIONAL FORGE COMPANY, et al.,

                Debtor.

-------------------------------------------------------------

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF NATIONAL FORGE
COMPANY,
                Plaintiff,

and

OFFICIAL COMMITTEE OF RETIREES
OF NATIONAL FORGE COMPANY,

                Intervenors,

v.

E. ROGER CLARK, both Individually and as
an Officer and Director of National Forge
Company, et al.,

                Defendants.

Civil No. 04-21 Erie

---

DECLARATION OF MAURICE J. CASHMAN IN SUPPORT OF MOTION
OF DEFENDANTS E. ROGER CLARK, MAURICE J. CASHMAN, DANA
BEYELER AND ROBERT A. KAEMMERER FOR SUMMARY JUDGMENT
AS TO COUNTS I THROUGH VII OF THE AMENDED COMPLAINT

     1.     Pursuant to the terms of the Amended Joint Plan of Reorganization dated

November 27, 2002, for National Forge Company ("NFC") and National Forge Components,

Inc. as confirmed by the United States Bankruptcy Court for this District (the "Bankruptcy

Court") on April 30, 2003, I am the Responsible Officer of Liquidating NFC (as that term is

defined in the Amended Plan).  Prior to the Bankruptcy Court appointing me the Responsible

Officer on May 1, 2003, I was employed by NFC from 1980 through 2003. In 1995 I became NFC's chief financial officer and continued in that position until becoming the Responsible Officer of Liquidating NFC. As a result of my duties as NFC's chief financial officer, I am fully familiar with the facts relating to the redemption on April 13, 1999 by National Forge Company Holdings, Inc. ("Holdings") of all of its outstanding Class B shares (the "Redemption Date"). I make this declaration in support of the motion for summary judgment filed by E. Roger Clark, Dana Beyeler and Robert A. Kaemmerer and me (collectively, the "Moving Defendants") in the captioned action.

      2.      At all times relevant to this action, Holdings was incorporated under the laws of the State of Delaware, and NFC was incorporated under the laws of the Commonwealth of Pennsylvania. Holdings conducted no business and had no employees; rather, it was, as its name suggests, a holding company that owned all of the shares of NFC. As for Holdings, it had two classes of stock: Class A and Class B. The National Forge Company Holdings, Inc. Employee Stock Ownership Plan (the "ESOP") owned all of the Class A shares. The individuals named as defendants in this action owned almost all of the Class B shares. They acquired those shares in 1995 when the ESOP and certain NFC employees formed Holdings as the vehicle to acquire the stock of NFC's then owners. To partly fund Holdings' acquisition of NFC, employees (among them the defendants) bought 116,347 Class B shares for $11.04 per share, thus generating $1,284,470.88 for Holdings. Defendants JP Morgan Chase (the successor to The Chase Manhattan Bank, Fleet Business Credit Corporation and National City Bank of Pennsylvania (collectively, the "Bank Defendants") then loaned Holdings, NFC and NFC's European subsidiary the amount necessary to fund both the balance of NFC purchase price and the borrowers' working capital needs.

3.      In 1996 and 1997 the Internal Revenue Code was amended to allow ESOP-owned corporations to elect Subchapter S corporations for tax purposes.  As a result of these changes Holdings could, if it had only one class of stock, eliminate its federal and state income tax liability since that income would pass directly to the ESOP, and the ESOP was exempt from federal and local income taxes.  The savings that Holdings could realize by electing Subchapter S status were very real:  according to calculations I prepared for Holdings' board of directors prior to the time it considered whether to elect Subchapter S status, Holdings' federal income tax liability for fiscal years 1998 through 2003 was projected to be $5,517,000.  By electing Subchapter S status, that expense would be eliminated.

4.      On December 22, 1998, the board of directors of Holdings, after being advised by its outside accounting firm and its valuation expert as to the definite benefits of electing Subchapter S status in light of the changes to the IRC, unanimously approved Holdings making that election.[1]  Because a corporation that elects Subchapter S status could have only one class of stock, the Board of Directors of Holdings at the same time also authorized the elimination of the Class B shares either through a redemption at a price per share of $49.42 (the "Redemption") or a merger designed to eliminate the Class B shares.  It was Valuemetrics, Inc., not Holdings' board of directors, which set the price per share of the Class B stock.  This was not Valuemetric Inc.'s first assignment for Holdings.  Federal law required that the value of the ESOP be

---

[1] Article FIFTH of Holdings' Certificate of Incorporation provides that Holdings' board of directors was to be comprised of nine members:  the president of the Independent Union of National Forge Employees (the "IUNFE") and two additional members designated by the IUNFE; the president of Holdings and two management employees designed by the president; and three independent directors.  Attached hereto as Exhibit 1 is a copy of Holdings' Certificate of Incorporation.  The following individuals comprised Holdings' board at the time:  E. Roger Clark (management), Ashok Khare (management), Patrick A. Flanagan (independent), Charles C. Judd (independent), John G. Koedel (independent), Stan Lundine (independent), Robert W. Richards (IUNFE), Harry D. Rosequist (IUNFE) and Dennis L. Peterson (IUNFE).  All of these directors voted in favor of the December 22, 1998 resolution.

3

determined annual, and Valuemetics, Inc. had been valuing the stock of Holdings beginning with fiscal year 1996 and continued doing so through fiscal year 2001 valuation.

5.      After Holdings' board authorized Holdings to redeem the Class B shares, Holdings sought and obtained the approval of the Bank Defendants to effectuate the Redemption using (if necessary) the cash available under Holdings' and NFC's existing credit facilities. Attached hereto as Exhibit 2 is a copy of Amendment No. 1 to the Amended and Restated Credit Agreement, dated April 6, 1999, under which the Bank Defendants authorized Holdings to effect the Redemption as approved by Holdings' board of directors ("Amendment No. 1").  As Amendment No. 1 shows, neither Holdings nor NFC granted any new liens to the Bank Defendants in connection with that amendment; rather, whatever liens the Bank Defendants had in Holdings' and NFC's assets were those that Holdings and NFC had granted to the Bank Defendants in 1995 under the predecessor to the Amended and Restated Credit Agreement referenced in Amendment No. 1.

6.      All of the Class B shareholders accepted Holdings' offer to redeem their shares. To fund the Redemption (a total of 116,347 shares), NFC on April 13, 1999, directed The Chase Manhattan Bank ("Chase") to transfer $5,749,868.74 (that is, the aggregate value of the Class B shares) from an NFC operating account at Chase to a Holdings' account at Chase.  Attached hereto as Exhibit 3 is a copy of NFC's bank statement for the period April 1 through April 30, 1999 for Chase account no. 530-043912 showing that April 13, 1999 transfer from NFC to Holdings.

7.      On that same day, Holdings repurchased the outstanding Class B shares in one of two ways.  For those 94,538 shares held in individual retirement accounts at National City Bank, Holdings directed Chase to wire transfer to National City Bank a single payment of

4

$4,672,067.96 representing the aggregate value of the shares held in those accounts. Attached hereto as Exhibit 4 is a copy of Holdings' bank statement for the period April 1 through April 30, 1999 for Chase account no. 530-543648 showing that April 13, 1999 wire transfer from Chase to National City Bank. National City Bank then disbursed that $4,672,067.96 among the following individuals on account of their Class B ownership interests as follows:

| Class B Shareholder | Number of Shares Held | Amount Received |
|---|---|---|
| Antos, Daniel | 3,582 | $ 177,022.44 |
| Bailey, William D. | 4,474 | 221,105.08 |
| Beyeler, Dana A. | 4,474 | 221,105.08 |
| Brewster, Richard A. | 1,790 | 88,461.80 |
| Caldwell, James E. | 4,029 | 199,113.18 |
| Campbell, Larry | 4,474 | 221,105.08 |
| Cashman, Maurice J. | 8,277 | 409,049.34 |
| Clark, E. Roger | 14,125 | 698,057.50 |
| Confer, James C. | 2,687 | 132,791.54 |
| D'Alessandro, Richard | 4,474 | 221,105.08 |
| Harris, James B. | 1,690 | 83,519.80 |
| Jackson, Thomas H. | 1,330 | 65,728.60 |
| Kaemmerer, Robert A. | 4,034 | 199,360.28 |
| Khare, Ashok K. | 4,300 | 212,506.00 |
| Luppino, Carl J. | 1,531 | 75,662.02 |
| Mason, Clarence E. | 4,474 | 221,105.08 |
| Murphy, Harold | 2,629 | 129,925.18 |
| Novosel, Phillip R. | 2,687 | 132,791.54 |
| Olson, Charles R. | 3,613 | 178,554.46 |
| Ruhlman, James D. | 4,029 | 199,113.18 |
| Simons, Phillip R. | 2,239 | 110,651.38 |
| Turk Glenn E. | 5,567 | 275,121.14 |
| Young, Ronald L. | 2,239 | 110,651.38 |
| Zischkau, Barry | 1,790 | 88,461.80 |

8.    For a shareholder that held his or her shares outside of an individual retirement account (the shares held directly by shareholders totaled 21,809), Holdings issued each such shareholder a check drawn on Holdings' Chase account no. 530-543648. Those individuals that received checks and the amounts of those checks are listed below:

| Class B Shareholder | Number of Shares Held | Amount Received |
|---|---|---|
| Cashman, Maurice J. | 672 | $ 33,210.24 |

5

P6

| Clark, Deborah E. | 8,240 | 407,220.80 |
|---|---|---|
| Kaemmerer, Robert A. | 4,915 | 242,899.30 |
| Turk, Glenn E. | 1,591 | 78,627.22 |
| Jackson, Thomas H. | 3,144 | 155,376.48 |
| Khare, Ashok K. | 174 | 8,599.08 |
| Olson, Charles R. | 861 | 42,550.62 |
| Murphy, Harold | 58 | 2,866.36 |
| Harris, James B. | 549 | 27,131.58 |
| Luppino, Carl J. | 708 | 34,989.36 |
| Fissel, Donald | 897 | 44,329.74 |

These 11 checks totaled $1,077,800.78. Attached hereto as Exhibit 5 are copies of the 11 checks that Holdings issued to these individuals.

9.      Of the Moving Defendants, only Mr. Clark was a director of either Holdings or NFC, and Defendant Charles R. Olson was not an officer of Holdings. Further, on November 5, 1999, Thomas G. Hessley replaced Harry D. Rosequist as one of the three IUNFE members on Holdings' board of directors, and Mr. Hessley attended his first meeting of Holdings' board on that date.

10.      If called as a witness, I can testify competently to the foregoing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 26, 2005

/s/ Maurice J. Cashman
Maurice J. Cashman

P7