Exhibit A-1
National Forge Company Holdings, Inc.'s Restated
Articles of Incorporation, Dated June 29, 1995

ANNEX 1

## CERTIFICATE OF INCORPORATION

OF

NATIONAL FORGE COMPANY HOLDINGS, INC.

* * * * *

FIRST. Name. The name of the Corporation is:

National Forge Company Holdings, Inc.

The Corporation was originally incorporated under the name NFC Acquisition Company on September 30, 1994.

SECOND. Address. The address of its registered office in the State of Delaware is 1013 Centre Road, in the City of Wilmington, County of New Castle. The name of its registered agent at such address is Corporation Service Company.

THIRD. Purpose. The Corporation is organized to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

FOURTH. Authorized Capital. The total number of shares of stock which the Corporation shall have authority to issue is 1,750,000 shares, consisting of 35,000 shares of Series A Voting Convertible Preferred Stock having a par value of $.01 per share, 635,000 shares of Class A Common Stock having a par value of $.01 per share (the "Class A Stock"), 1,000,000 shares of Class B Common Stock having a par value of $.01 per share (the "Class B Stock") and 80,000 shares of Class C Common Stock having a par value of $.01 per share (the "Class C Stock" and, together with the Class A Stock and Class B Stock, the "Common Stock").

A.  Class A Common Stock.

1.  Restriction on Ownership; Reservation.

1.1. Shares of Class A Common Stock shall be issued only to a trustee or trustees acting on behalf of the National Forge Company Holdings, Inc. Employee Stock Ownership Plan (the "ESOP"). In the event of any sale, transfer or other disposition

P:\1-45:851.10

(including, without limitation, upon a foreclosure or other realization upon shares of Class A Stock pledged as security for any loan or loans made to the ESOP or to the trustee or trustees acting on behalf of the ESOP) (a "transfer") of shares of Class A Stock to any other person (including, without limitation, any participant in the ESOP), the shares of Class A Stock so transferred, upon such transfer and without any further action by the Corporation or the holder shall be automatically converted into shares of Class B Stock and thereafter such transferee shall not have any of the rights ascribed to Class A Stock hereunder, but, rather, shall have the powers and rights pertaining to the Class B Stock into which such shares of Class A Stock shall be so converted. In the event of any such automatic conversion, such transferee shall be treated for all purposes as the record holder of the shares of Class B Stock into which the Class A Stock shall have been converted as of the date of such conversion.

1.2. The Corporation shall at all times reserve and keep available out of its authorized but unissued shares of Class B Stock or its treasury shares, such number of shares of Class B Stock as shall then be issuable upon a conversion of all issued and outstanding shares of Class A Stock. The issuance of certificates for shares of Class B Stock upon conversion of shares of Class A Stock shall be made without charge to the holders of such shares; provided that the Corporation shall not be required to pay any tax which may be payable in respect of any transfer involving the issue and delivery of any certificate in a name other than that of the holder.

2. Voting  The holders of shares of Class A Stock shall have the following voting rights:

2.1.(a) The holders of the Class A Stock shall vote together as a single class with the holders of Class B Stock and with the holders of such other classes or series of stock that vote together with the Class B Stock as a single class on all matters submitted to a vote of the holders of Common Stock of the Corporation, except as otherwise required by law or this Certificate. For purposes of any such vote each share of the Class A Stock shall be entitled to cast a number of votes calculated in accordance with Subsection 2.1(b).

(b) With respect to any vote or consent with respect to which the Class A Stock is entitled to vote pursuant to Subsection 2.1(a) the holders of the Class A Stock shall be entitled to a number of votes per share equal to 1.739 multiplied by a fraction, the numerator of which shall be the number of votes entitled to be cast on the matter by the holders of all outstanding securities of the Corporation (excluding the Class A Stock), and the denominator of which shall be the outstanding number of shares of Class A Stock (the "Formula Vote"). If the number of shares of Class A Stock outstanding divided by the

- 2 -

number of votes entitled to be cast by the holders of all outstanding securities of the Corporation (assuming, for purposes of this calculation, (a) exercise of any outstanding warrant and conversion of Class C Stock into Class B Stock and (b) the Class A Stock has one vote per share) exceeds .635, then the holders of the Class A Stock shall be entitled to one vote per share.  If the actual number of outstanding shares of Class A Stock falls below 15% of the total number of outstanding shares of capital stock of the Corporation at any time after June 30, 2000, then the foregoing Formula Vote shall be eliminated and each share of Class A Stock shall be entitled to only one (1) vote per share.

2.2.  The affirmative vote or written consent of a majority of the outstanding shares of Class A Stock, voting separately as a class, shall be necessary for authorizing, effecting or validating (a) any transaction identified in Article TENTH or (b) the amendment, alteration or repeal (including any amendment, alteration or repeal by operation of merger or consolidation) of any of the provisions of this Certificate or of any certificate amendatory thereof or supplemental thereto (including any Certificate of Designation, Preferences and Rights or any similar document relating to any series of Preferred Stock) which would adversely affect the preferences, rights, powers or privileges of the Class A Stock.

3.    Dividends.  Subject to any rights to receive dividends to which the holders of the shares of any other class or series of stock may be entitled the holders of shares of Class A Stock shall be entitled to receive dividends, if and when declared payable from time to time by the Board of Directors, from any funds legally available therefor.

4.    Liquidation.  In the event of any dissolution, liquidation or winding up of the Corporation, whether voluntary or involuntary, after there shall have been paid to the holders of shares of any other class or series of stock ranking prior to the Common Stock in respect thereof the full amounts to which they shall be entitled, and subject to any rights of the holders of any other class or series of stock to participate therein, the holders of the then outstanding shares of Common Stock shall be entitled to receive pro rata, any remaining assets of the Corporation, or may sell, transfer or otherwise dispose of all or any part of such remaining assets to any other corporation, trust or other entity and receive payment therefor in cash, stock or obligations of such other corporation, trust or entity or any combination thereof, and may sell all or any part of the consideration so received, and may distribute the consideration so received or any balance thereof in kind to holders of the shares of Common Stock.  The voluntary sale, conveyance, lease, exchange or transfer of all or substantially all the property or assets of the Corporation (unless in connection therewith the dissolution, liquidation or winding up of the Corporation is

- 3 -

specifically approved), or the merger or consolidation of the
Corporation into or with any other corporation, or the merger of
any other corporation into it, or any purchase or redemption of
shares of stock of the Corporation of any class, shall not be
deemed to be a dissolution, liquidation or winding up of the
Corporation for the purposes of this Section.

        5.    Preemptive Rights.   The holders of the Class A
Stock will have preemptive rights to subscribe for any additional
shares of Class A Stock which may be issued by the Corporation.

    B.    Class B Common Stock.

        1.    Voting.   Each outstanding share of Class B Stock
of the Corporation shall entitle the holder thereof to one (1)
vote on each matter submitted to a vote at a meeting of the
stockholders of the Corporation, except as otherwise provided by
law or this Certificate.   The affirmative vote or written consent
of a majority of the outstanding shares of Class B Stock, voting
separately as a class, shall be necessary for authorizing,
effecting or validating (a) any transaction identified in Article
TENTH or (b) the amendment, alteration or repeal (including any
amendment, alteration or repeal by operation of merger or
consolidation) of any of the provisions of this Certificate or of
any certificate amendatory thereof or supplemental thereto
(including any Certificate of Designation, Preferences and Rights
or any similar document relating to any series of Preferred
Stock) which would adversely affect the preferences, rights,
powers or privileges of the Class B Stock.

        2.    Dividends.   Subject to any rights to receive
dividends to which the holders of the shares of any other class
or series of stock may be entitled the holders of shares of Class
B Stock shall be entitled to receive dividends, if and when
declared payable from time to time by the Board of Directors,
from any funds legally available therefor.

        3.    Liquidation.   In the event of any dissolution,
liquidation or winding up of the Corporation, whether voluntary
or involuntary, after there shall have been paid to the holders
of shares of any other class or series of stock ranking prior to
the Common Stock in respect thereof the full amounts to which
they shall be entitled, and subject to any rights of the holders
of any other class or series of stock to participate therein, the
holders of the then outstanding shares of Common Stock shall be
entitled to receive pro rata, any remaining assets of the
Corporation, or may sell, transfer or otherwise dispose of all or
any part of such remaining assets to any other corporation, trust
or other entity and receive payment therefor in cash, stock or
obligations of such other corporation, trust or entity or any
combination thereof, and may sell all or any part of the
consideration so received, and may distribute the consideration

- 4 -

P12

so received or any balance thereof in kind to holders of the shares of Common Stock. The voluntary sale, conveyance, lease, exchange or transfer of all or substantially all the property or assets of the Corporation (unless in connection therewith the dissolution, liquidation or winding up of the Corporation is specifically approved), or the merger or consolidation of the Corporation into or with any other corporation, or the merger of any other corporation into it, or any purchase or redemption of shares of stock of the Corporation of any class, shall not be deemed to be a dissolution, liquidation or winding up of the Corporation for the purposes of this Section.

   4.   Preemptive Rights. The holders of the Class B Stock will have preemptive rights to subscribe for any additional shares of Class B Stock which may be issued by the Corporation, except shares of Class B Stock issued upon conversion of the Class A Stock, shares of Class B Stock issued upon conversion of the Class C Stock and shares of Class B Stock issued upon conversion of the Preferred Stock.

   C.   Class C Common Stock.

   1.   Voting. The Class C Stock shall have no voting rights.

   2.   Dividends. Subject to any rights to receive dividends to which the holders of the shares of any other class or series of stock may be entitled the holders of shares of Class C Stock shall be entitled to receive dividends, if and when declared payable from time to time by the Board of Directors, from any funds legally available therefor.

   3.   Liquidation. In the event of any dissolution, liquidation or winding up of the Corporation, whether voluntary or involuntary, after there shall have been paid to the holders of shares of any other class or series of stock ranking prior to the Common Stock in respect thereof the full amounts to which they shall be entitled, and subject to any rights of the holders of any other class or series of stock to participate therein, the holders of the then outstanding shares of Common Stock shall be entitled to receive pro rata, any remaining assets of the Corporation, or may sell, transfer or otherwise dispose of all or any part of such remaining assets to any other corporation, trust or other entity and receive payment therefor in cash, stock or obligations of such other corporation, trust or entity or any combination thereof, and may sell all or any part of the consideration so received, and may distribute the consideration so received or any balance thereof in kind to holders of the shares of Common Stock. The voluntary sale, conveyance, lease, exchange or transfer of all or substantially all the property or assets of the Corporation (unless in connection therewith the dissolution, liquidation or winding up of the Corporation is

- 5 -

specifically approved), or the merger or consolidation of the
Corporation into or with any other corporation, or the merger of
any other corporation into it, or any purchase or redemption of
shares of stock of the Corporation of any class, shall not be
deemed to be a dissolution, liquidation or winding up of the
Corporation for the purposes of this Section.

    4.   Conversion; Reservation.

    4.1  Conversion of Class C Stock. Upon or after
the occurrence of any Conversion Event (as hereinafter defined),
each holder of Class C Stock shall be entitled to convert into
the same number of shares of Class B Stock any or all of the
shares of such holder's Class C Stock which have been or are
being distributed, disposed of, transferred or sold in connection
with such Conversion Event. For purposes of this Section 4.1, a
"Conversion Event" shall mean any (a) public sale pursuant to
Rule 144 or 144A of the Securities Act of 1933, as amended (the
"Securities Act"), so long as such public sale is effected in
accordance with paragraph (e) of Rule 144 of the Securities Act,
(b) sale, transfer or other disposition (each, a "sale") of
securities of the Corporation to a person or group of persons
(within the meaning of the Securities Exchange Act of 1934, as
amended (the "1934 Act"), if, after such sale, such person or
group of persons in the aggregate would own or control securities
which possess in the aggregate the ordinary voting power to elect
a majority of the Corporation's directors (provided that such
sale has been approved by the Corporation's Board of Directors or
a committee thereof), (c) sale of securities of the Corporation
to a person or group of persons (within the meaning of the 1934
Act) if, after such sale, such person or group of persons in the
aggregate would own or control securities of the Corporation
(excluding any Class C Stock being converted and transferred,
sold or disposed of in connection with such Conversion Event)
which possesses in the aggregate the ordinary voting power to
elect a majority of the Corporation's directors, (d) sale of
securities of the Corporation to a person or group of persons
(within the meaning of the 1934 Act) if, after such sale, such
person or group of persons would not, in the aggregate, own,
control or have the right to acquire more than two percent (2%)
of the outstanding securities of any class of voting securities
of the Corporation, (e) merger, consolidation or similar
transaction involving the Corporation if, after such transaction,
a person or group of persons (within the meaning of the 1934 Act)
in the aggregate would own or control securities which possess in
the aggregate the ordinary voting power to elect a majority of
the surviving corporation's directors (provided that the
transaction has been approved by the Corporation's Board of
Directors or a committee thereof), (f) sale of securities of the
Corporation to the Corporation or any subsidiary of the
Corporation and (g) sale to the public in an offering registered
pursuant to the Securities Act. For purposes of this Section 2,

    - 6 -

P14

"person" shall include any natural person and any corporation, partnership, joint venture, trust, unincorporated organization and any other entity or organization.

All shares of Class B Stock which are so issuable shall, when issued, be duly and validly issued, fully paid and nonassessable and free from all taxes, liens and charges. The Corporation shall take all actions as may be necessary to assure that all such shares of Class B Stock may be so issued without violation of any applicable law or governmental regulation or any requirements of any domestic securities exchange upon which shares of Class B Stock may be listed.

4.2 The Corporation shall at all times reserve and keep available out of its authorized but unissued shares of Class B Stock or its treasury shares, such number of shares of Class B Stock as shall then be issuable upon a conversion of all issued and outstanding shares of Class C Stock. The issuance of certificates for shares of Class B Stock upon conversion of shares of Class C Stock shall be made without charge to the holders of such shares; provided, that the Corporation shall not be required to pay any tax which may be payable in respect of any transfer involving the issue and delivery of any certificate in a name other than that of the holder of the Converting Shares.

D.  Series A Preferred Stock.

1.  Designation and Amount.  The Corporation's "Series A Voting Convertible Preferred Stock" (the "Series A Preferred Stock") shall consist of 35,000 shares, par value $.01 per share.

2.  Dividends and Distributions.

2.1 The holders of shares of Series A Preferred Stock shall be entitled to receive in each calendar year, when, as and if declared by the Board out of funds legally available therefor, cash dividends ("Preferred Dividends") in an amount per share equal to $10.00 per annum, and no more. The Preferred Dividends will be payable quarterly in arrears on the last "Business Day" of each calendar quarter (each a "Dividend Payment Date") commencing on September 30, 1995. "Business Day" shall mean each day that is not a Saturday, Sunday or a day on which state or federally chartered banks in Pittsburgh, Pennsylvania are not required to be open for banking business. Preferred Dividends shall begin to accrue on outstanding shares of Series A Preferred Stock from the date of issuance of such shares of Series A Preferred Stock. Preferred Dividends shall accrue on a daily basis, on the basis of a year of 360 days and twelve months of 30 days each, whether or not the Corporation shall have earnings or surplus at the time. Accrued but unpaid Preferred Dividends shall cumulate as of the Dividend Payment Date on which

- 7 -

they first become payable, but no interest shall accrue on accumulated but unpaid Preferred Dividends.

2.2  So long as Series A Preferred Stock shall be outstanding, no dividend shall be declared or paid or set apart for payment on any other series of stock ranking on a parity with the Series A Preferred Stock as to dividends, unless there shall also be or have been declared and paid or set apart for payment on the Series A Preferred Stock, like dividends for all dividend payment periods of the Series A Preferred Stock ending on or before the dividend payment date of such parity stock, ratably in proportion to the respective amounts of dividends accumulated and unpaid through such dividend payment period on the Series A Preferred Stock and accumulated and unpaid or payable on such parity stock through the dividend payment period on such parity stock next preceding such dividend payment date.  In the event that full cumulative dividends on the Series A Preferred Stock have not been declared and paid or set apart for payment when due, the Corporation shall not declare or pay or set apart for payment any dividends or make any other distributions on, or make any payment on account of the purchase, redemption or other retirement of, Common Stock or any other class of stock or series thereof of the Corporation ranking, as to dividends or as to distributions in the event of a liquidation, dissolution or winding-up of the Corporation, junior to the Series A Preferred Stock until full cumulative dividends on the Series A Preferred Stock shall have been paid or declared and provided for; provided, however, that the foregoing shall not apply to (i) any dividend payable solely in any shares of any stock ranking, as to dividends and as to distributions in the event of a liquidation, dissolution or winding-up of the Corporation, junior to the Series A Preferred Stock, or (ii) the acquisition of shares either (A) pursuant to any employee or director incentive or benefit plan or arrangement (including any ESOP and any employment, severance or consulting agreement) of the Corporation or any subsidiary of the Corporation heretofore or hereafter adopted, (B) pursuant to any subscription agreement to purchase Common Stock directly from the Corporation entered into before the first date on which any shares of Series A Preferred Stock shall have been issued, or (C) in exchange solely for shares of Common Stock or any other class of stock or series thereof ranking, as to dividends and as to distributions in the event of a liquidation, dissolution or winding-up of the corporation, junior to the Series A Preferred Stock.

3.  Voting Rights.  Each outstanding share of Series A Preferred Stock shall be entitled to the number of votes equal to the number of shares of Class E Stock into which each share of the Series A Preferred Stock is convertible on the record date for determining shareholders entitled to vote on or consent to the matter in question, and shall have voting rights and powers, subject to the provisions herein contained, equal to the voting

- 8 -

rights and powers of the Class B Stock. Each holder of record of Series A Preferred Stock shall be entitled to notice of any shareholders' meeting in accordance with the By-Laws of the Corporation. The Series A Preferred Stock shall vote as a single class with the Class B Stock upon any matter submitted to a vote of shareholders, except with respect to any amendment, alteration or repeal of any of the provisions of these Articles which would adversely affect the preferences, rights, powers of privileges of the Series A Preferred Stock in which case the Series A Preferred Stock shall vote as a separate class of stock. Unless permitted by the Corporation's By-Laws or Certificate of Incorporation, fractional votes by the holders of Series A Preferred Stock shall not, however, be permitted and any fractional voting rights resulting from the above formula (after aggregating all shares into which shares of Series A Preferred Stock held by each holder could be converted) shall be rounded to the nearest whole number.

4.  **Liquidation, Dissolution or Winding Up.**

    4.1  Upon any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, the holders of Series A Preferred Stock shall be entitled to receive out of assets of the Corporation which remain after satisfaction in full of all valid claims of creditors of the Corporation and which are available for payment to shareholders, and subject to the rights of the holders of any stock of the Corporation ranking senior to or on a parity with the Series A Preferred Stock in respect of distributions upon liquidation, dissolution or winding up of the Corporation, before any amount shall be paid or distributed among the holders of Common Stock or any other shares ranking junior to the Series A Preferred Stock in respect of distributions upon liquidation, dissolution or winding up of the corporation, liquidating distributions in the amount of $100.00 per share (the "Liquidation Price"), plus an amount equal to all accrued and unpaid dividends thereon to the date fixed for distribution, and no more. If upon any liquidation, dissolution or winding up of the Corporation, the amounts payable with respect to the Series A Preferred Stock and any other stock ranking as to any such distribution on a parity with the Series A Preferred Stock are not paid in full, the holders of the Series A Preferred Stock and such other stock shall share ratably in any distribution of assets in proportion to the full respective preferential amounts to which they are entitled. After payment of the full amount to which they are entitled as provided by the foregoing provisions of this paragraph 4.1, the holders of shares of Series A Preferred Stock shall not have any right or claim to any of the remaining assets of the Corporation.

    4.2  Neither the merger or consolidation of the Corporation with or into any other corporation, nor the merger or consolidation of any other corporation with or into the Corporation, nor the sale, lease, exchange or other transfer of

- 9 -

all or any portion of the assets of the Corporation, shall be deemed to be a dissolution, liquidation or winding up of the affairs of the Corporation for purposes of this Section 4.

4.3   Written notice of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, stating the payment date or dates when, and the place or places where, the amounts distributable to holders of Series A Preferred Stock in such circumstances shall be payable, shall be given by first-class mail, postage prepaid, mailed not less than twenty (20) days prior to any payment date stated therein, to the holders of Series A Preferred Stock, at the addresses shown on the books of the Corporation or any transfer agent for the Series A Preferred Stock.

5.   Conversion into Class B Stock.

5.1   A holder of shares of Series A Preferred Stock shall be entitled, at any time prior to the close of business on the fifth day prior to the date fixed for redemption of such shares pursuant to Section 6 hereof, to cause any or all of such shares to be converted into shares of Class B Stock.  The number of shares of Class B Stock into which each share of Series A Preferred Stock may be converted shall be determined by dividing the Liquidation Price by the Conversion Price (as hereinafter defined) in effect at the time of conversion.  The initial Conversion Price per share at which shares of Class B Stock shall be issuable upon conversion of any shares of Series A Preferred Stock shall be $25.00, subject to adjustment as hereinafter provided; that is, a conversion rate initially equivalent to four shares of Class B Stock for each share of Series A Preferred Stock, subject to adjustment as hereinafter provided.

5.2   Any holder of shares of Series A Preferred Stock desiring to convert such shares into Class B Stock shall surrender the certificate or certificates representing the shares of Series A Preferred Stock being converted duly assigned or endorsed for transfer to the Corporation (or accompanied by duly executed stock powers relating thereto), at the principal executive office of the Corporation or the offices of the transfer agent for the Series A Preferred Stock as may from time to time be designated by notice to the holders of the Series A Preferred Stock by the Corporation or the transfer agent for the Series A Preferred Stock, accompanied by a written notice of conversion.  Such notice of conversion shall specify (i) the number of shares of Series A Preferred Stock to be converted and the name or names in which the holder wishes the certificate or certificates representing Class B Stock and any shares of Series A Preferred Stock not to be so converted to be registered, and (ii) the address to which such holder wishes delivery to be made of such certificate or certificates to be delivered upon such exchange.

- 10 -

5.3   Upon surrender of a certificate representing a
share or shares of Series A Preferred Stock for conversion, the
Corporation shall issue and send by hand delivery (with receipt
to be acknowledged) or by first class mail, postage prepaid, to
the holder thereof or to such holder's designee, at the address
designated by such holder a certificate or certificates for the
number of shares to which such holder shall be entitled upon
conversion.  If there shall have been surrendered a certificate
or certificates representing shares of Series A Preferred Stock,
only part of which are to be converted, the Corporation shall
issue and deliver to such holder or such holder's designee a new
certificate or certificates representing the number of shares of
Series A Preferred Stock which shall not have been converted.

5.4   The issuance by the Corporation of Class B Stock
upon a conversion of shares of Series A Preferred Stock into
Class B Stock made at the option of the holder thereof shall be
effective as of the earlier of (i) the delivery to such holder or
such holder's designee of the certificate or certificates
representing the Class B Stock delivered upon conversion thereof
or (ii) the commencement of business on the second Business Day
after the surrender of the certificate or certificates for the
shares of Series A Preferred Stock to be converted, with the
written notice of conversion form properly completed.  On and
after the effective date of a conversion, the person or persons
entitled to receive the Class B Stock issuable upon such
conversion shall be treated for all purposes as the record holder
or holders of such Class B Stock, and no allowance or adjustment
shall be made in respect of dividends payable to holders of Class
B Stock of record on any date prior to such effective date.  The
Corporation shall not be obligated to pay any dividend that may
have accrued or have been declared but that is not payable to
holders of shares of Series A Preferred Stock if the Dividend
Payment Date for such dividend is on or subsequent to the
effective date of conversion of such shares.

5.5   The Corporation shall not be obligated to deliver
to holders of Series A Preferred Stock any fractional share or
shares of Class B Stock issuable upon any conversion of such
shares of Series A Preferred Stock, but in lieu thereof may make
a cash payment in respect thereof equal to the fair market value
of such fractional interest.  If more than one share of Series A
Preferred Stock is surrendered for conversion at one time, the
number of shares of Class B Stock delivered upon the conversion
will be computed on the basis of all the shares of Series A
Preferred Stock so surrendered.

5.6   The Corporation shall at all times reserve and
keep available out of its authorized Class B Stock the full
number of shares of Class B Stock as shall from time to time be
issuable upon the conversion of all of the shares of Series A
Preferred Stock then outstanding.

- 11 -

5.7 If at any time there shall be a merger or consolidation of the Corporation with or into another corporation then, as part of such merger or consolidation, provision shall be made so that the holders of the Series A Preferred Stock shall thereafter, at the election of the holders of Series A Preferred Stock, be entitled to receive upon conversion of the Series A Preferred Stock (in lieu of the number of shares of Class B Stock issuable upon conversion immediately prior to such merger or consolidation) the number of shares of stock or other securities or property of the corporation, or of the successor corporation resulting from such merger or consolidation, to which a holder of the number of shares of Class B Stock issuable upon conversion would have been entitled on such merger or consolidation.

6. Redemption At the Option of the Corporation. The Series A Preferred Stock shall be redeemable, in whole or in part, at the option of the Corporation at any time after June 30, 1999, out of funds legally available therefor, at a redemption price per share equal to the higher of the Liquidation Price or the Fair Market Value of the Class B Stock into which the Series A Preferred Stock is convertible plus, in either case, all accrued and unpaid dividends on the shares of Series A Preferred Stock up to the date fixed for redemption. "Fair Market Value" shall mean, as to shares of Class B Stock or any other class of capital stock or securities of the Corporation, the fair value thereof as determined by an independent investment banking or appraisal firm recognized in the industry and experienced in the valuation of such securities selected by the Board of Directors of the Corporation. The most recent ESOP valuation performed for the Corporation shall be utilized to determine Fair Market Value as long as the Corporation maintains an ESOP. Payment of the redemption price shall be made by the Corporation in cash. From and after the date fixed for redemption, dividends on shares of Series A Preferred Stock will cease to accrue and all rights of the holder in respect of such shares shall cease, except the right to receive the redemption price.

Notice of any redemption (a "Notice of Redemption") of Series A Preferred Stock shall be mailed by first-class mail, postage prepaid, at least 35 days prior to the date fixed for redemption to each holder of Series A Preferred Stock to be redeemed, at such holder's address as it appears on the books of the Corporation. Each Notice of Redemption shall state (i) the redemption date, (ii) the redemption price, (iii) the number of shares of Series A Preferred Stock to be redeemed and identification (by series and by certificate number or otherwise) of the shares of Series A Preferred Stock to be redeemed, (iv) the place or places where shares of Series A Preferred Stock are to be surrendered for payment of the redemption price, (v) that dividends on the shares to be redeemed will cease to accrue on such redemption date, and (vi) the conversion rights of the shares to be redeemed. A Notice of Redemption shall be deemed

given on the day that it is mailed in accordance with the terms of this subsection.

On or after the redemption date each holder of shares of Series A Preferred Stock that were called for redemption shall surrender the certificate evidencing such shares, properly endorsed in blank for transfer or accompanied by proper instruments of assignment or transfer in blank, and bearing all necessary transfer tax stamps thereto affixed and canceled, to the Corporation at the place designated in the Notice of Redemption and shall then be entitled to receive payment of the redemption price for each share.  If fewer than all of the shares are to be redeemed, the Corporation shall issue new share certificates for the shares not redeemed.

If fewer than all of the outstanding shares of the Series A Preferred Stock are to be redeemed, the number of shares to be redeemed shall be determined by the Corporation ratably or by lot or by such other method as the Corporation shall deem fair and equitable.

7.    Anti-dilution Adjustments.

7.1  If the Corporation shall, at any time or from time to time while any of the shares of the Series A Preferred Stock are outstanding; (i) pay a dividend or make a distribution in respect of the Common Stock in Common Stock, (ii) subdivide the outstanding number of shares of Common Stock, or (iii) combine the outstanding number of shares of Common Stock into a smaller number of shares, in each case whether by reclassification of shares, recapitalization of the Corporation or otherwise, then subject to the provisions of paragraphs 7.4 and 7.5 of this Section 7, the Conversion Price in effect immediately prior to such action shall be adjusted by multiplying such Conversion Price by a fraction, the numerator of which is the number of shares of Common Stock outstanding immediately before such event, and the denominator of which is the number of shares of Common Stock outstanding immediately after such event. An adjustment made pursuant to this paragraph 7.1 shall be given effect, upon payment of such a dividend or distribution, as of the record date for the determination of shareholders entitled to receive such dividend or distribution (on a retroactive basis) and in the case of a subdivision or combination shall become effective immediately as of the effective date thereof.

7.2  If the Corporation shall, at any time or from time to time while any of the shares of Series A Preferred Stock are outstanding, issue to holders of Common Stock as a dividend or distribution, any right or warrant to purchase Common Stock (but not including as such a right or warrant any security convertible into Common Stock) at a purchase price per share less than the Fair Market Value of a share of Common Stock on the date

- 13 -

of issuance of such right or warrant, then, subject to the provisions of paragraphs 7.4 and 7.5 of this Section 7, the Conversion Price shall be adjusted by multiplying such Conversion Price by a fraction, the numerator of which shall be the number of shares of Common Stock outstanding immediately before such issuance of rights or warrants plus the number of shares of Common Stock which could be purchased at the Fair Market Value of a share of Common Stock at the time of such issuance for the maximum aggregate consideration payable upon exercise in full of all such rights or warrants, and the denominator of which shall be the number of shares of Common Stock outstanding immediately before such issuance of rights or warrants plus the maximum number of shares of Common Stock that could be acquired upon exercise in full of all such rights and warrants. An adjustment made pursuant to this paragraph 7.2 shall be given effect upon such issuance of rights or warrants.

7.3   If the Corporation shall, at any time or from time to time while any of the shares of Series A Preferred Stock are outstanding, make an Extraordinary Distribution (as hereinafter defined) in respect of the Common Stock, whether by dividend, distribution, reclassification of shares or recapitalization of the Corporation, the Conversion Price in effect immediately prior to such Extraordinary Distribution shall, subject to paragraphs 7.4 and 7.5 of this Section 7, be adjusted by multiplying such Conversion Price by a fraction, the numerator of which is (i) the product of (x) the number of shares of Common Stock outstanding immediately before such Extraordinary Distribution multiplied by (y) the Fair Market Value of a share of Common Stock on the day before the record date for the determination of shareholders entitled to receive such Extraordinary Distribution, minus (ii) the aggregate Fair Market Value of the Extraordinary Distribution, and the denominator of which shall be the product of (A) the number of shares of Common Stock outstanding immediately before such Extraordinary Distribution multiplied by (B) the Fair Market Value of a share of Common Stock on the day before the record date with respect to an Extraordinary Distribution. The Corporation shall send each holder of Series A Preferred Stock notice of its intent to make any Extraordinary Distribution. Such notice shall indicate the intended record date and the amount and nature of such Extraordinary Distribution, as well as the Conversion Price and the number of shares of Common Stock into which a share of Series A Preferred Stock may be converted at such time. "Extraordinary Distribution" shall mean any dividend or other distribution to holders of Common Stock (effected while any of the shares of the Series A Preferred Stock are outstanding) of (a) cash (other than that portion of a regularly scheduled quarterly dividend not exceeding 125% of the average regularly scheduled quarterly dividend for the most recent period of 12 months in which the Corporation paid four quarterly dividends) or (b) any shares of capital stock of the Corporation (other than shares of Common

- 14 -

Stock), other securities of the Corporation (other than securities of the type referred to in paragraph 7.2 of this Section 7), evidences of indebtedness of the Corporation or any other person or any other property (including shares of any subsidiary of the Corporation), or any combination thereof.

7.4   Notwithstanding any other provisions of this Section 7, the Corporation shall not be required to make any adjustment of the Conversion Price unless such adjustment would require an increase or decrease of at least one percent (1%) in the Conversion Price. Any lesser adjustment shall be carried forward and shall be made no later than the time of, and together with, the next subsequent adjustment which, together with any adjustment or adjustments so carried forward, shall amount to an increase or decrease of at least one percent (1%) in the Conversion Price.

7.5   If the Corporation shall make any dividend or distribution on the Common Stock or issue any Common Stock, other capital stock or other security of the Corporation or any rights or warrants to purchase or acquire any such security, which transaction does not result in an adjustment to the Conversion Price pursuant to the foregoing provisions of this Section 7 or results in an adjustment which the Board determines to be inadequate under the circumstances, the Board shall consider whether such action is of such a nature that an adjustment (or a further adjustment) to the Conversion Price equitably should be made in respect of such transaction. If in such case the Board determines that an adjustment (or a further adjustment) to the Conversion Price should be made, an adjustment (or a further adjustment) shall be made effective as of such date as determined by the Board (which adjustment shall in no event adversely affect the powers, preferences or special rights of the Series A Preferred Stock as set forth herein). The determination of the Board as to whether an adjustment (or a further adjustment) to the Conversion Price should be made pursuant to the foregoing provisions of this paragraph 7.5, and, if so, as to what adjustment should be made and when, shall be final and binding on the Corporation and all shareholders of the Corporation.

7.6   Whenever an adjustment to the Conversion Price is required pursuant hereto the Corporation shall forthwith place on file with the transfer agent for the Series A Preferred Stock if there be one, and with the Secretary of the Corporation, a statement signed by two officers of the Corporation stating the adjusted Conversion Price determined as provided herein and the resulting ratio of conversion of shares of Series A Preferred Stock into shares of Class B Stock. Such statement shall set forth in reasonable detail such facts as shall be necessary to show the reason and the manner of computing such adjustment, including any determination of Fair Market Value involved in such computation. Promptly after each adjustment to the Conversion

- 15 -

P23

Price, the Corporation shall mail a notice thereof and of the then prevailing ratio of conversion of shares of Series A Preferred Stock into Class B Stock, to each holder of shares of the Series A Preferred Stock.

8. Ranking; Retirement of Shares.

8.1 The Series A Preferred Stock shall rank senior to all shares of all classes and series of stock, including, but not limited to, the Common Stock of the Corporation with regard to the right to receive dividends, the right to receive distributions on the liquidation, dissolution or winding up of the Corporation or with regard to any other matters.

8.2 Any shares of Series A Preferred Stock acquired by the Corporation by reason of the conversion or redemption of such shares as provided herein, or otherwise so acquired, shall be retired as shares of Series A Preferred Stock and restored to the status of authorized but unissued shares of preferred stock, par value $100 per share, of the Corporation.

9. Miscellaneous.

9.1 All notices referred to herein shall be in writing, and all notices hereunder shall be deemed to have been given upon the earlier of receipt thereof or three (3) Business Days after the mailing thereof if sent by registered mail (unless first-class mail shall be specifically permitted for such notice under the terms hereof) with postage prepaid, addressed: (i) if to the Corporation to its office at One Front Street, Irvine, PA or to such other agent of the Corporation as may be designated as permitted herein or (ii) if to any holder of the Series A Preferred Stock, to such holder at the address of such holder as listed in the stock record books of the Corporation (which may include the records of any transfer agent for the Series A Preferred Stock or (iii) to such other address as the Corporation or any such holder, as the case may be, shall have designated by notice similarly given.

9.2 The Corporation shall pay any and all stock transfer and documentary stamp taxes that may be payable in respect of any issuance or delivery of shares of Series A Preferred Stock or shares of Class B Stock or other securities issued or delivered on account of Series A Preferred Stock pursuant hereto or certificates representing such shares or securities. The Corporation shall not, however, be required to pay any such tax which may be payable in respect of any transfer involved in the issuance or delivery of shares of Series A Preferred Stock or Class B Stock or other securities in a name other than that in which the shares of Series A Preferred Stock with respect to which such shares or other securities are issued

- 16 -

or delivered were registered, or in respect of any payment to any person with respect to any such shares or securities other than a payment to the registered holder thereof, and shall not be required to make any such issuance, delivery or payment unless and until the person otherwise entitled to such issuance, delivery or payment has paid to the Corporation the amount of any such tax or has established, to the satisfaction of the Corporation that such tax has been paid or is not payable.

9.3  If a holder of shares of Series A Preferred Stock shall not by written notice designate the name in which shares of Class B Stock to be delivered upon exchange of such shares should be registered or to whom payment upon redemption of shares of Series A Preferred Stock should be made or the address to which the certificate or certificates representing such shares, or such payment, should be sent, the Corporation shall be entitled to register such shares, and make such payment, in the name of the holder of such Series A Preferred Stock as shown on the records of the Corporation and to send the certificate or certificates representing such shares, or such payment, to the address of such holder shown on the records of the Corporation.

9.4  The Corporation may appoint, and from time to time discharge and change, a transfer agent for the Series A Preferred Stock.  Upon any such appointment or discharge of a transfer agent, the Corporation shall send notice thereof by first-class mail, postage prepaid, to each holder of record of Series A Preferred Stock.

9.5  The holders of the Series A Preferred Stock will not have any preemptive right to subscribe for or purchase any shares of Series A Preferred Stock or any other securities which may be issued by the Corporation.

FIFTH.  Board of Directors.  The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors of the Corporation which shall consist of nine (9) persons.  The terms, classifications, qualifications and election of the Board of Directors and the filling of vacancies thereon shall be as provided herein or in the By-laws to the extent not inconsistent with the provisions of this Certificate of Incorporation.  The members of the Board of Directors shall be divided into three classes, namely Class I, Class II and Class III, each of which shall be of equal size.  The classification shall be such that the term of office of one class shall expire each succeeding year, with the term of office of Class I to expire at the 1996 annual meeting of stockholders, the term of office of Class II to expire at the 1997 annual meeting of stockholders, and the term of office of Class III to expire at the 1998 annual meeting of stockholders.

Members of the various classes of the Board of Directors shall consist only of those individuals who are at the time of their election an eligible candidate by virtue of satisfying the qualifications described below and who thereafter continue to satisfy the qualifications described below. The term of office of any incumbent director shall be shortened and shall automatically expire, and such individual's seat shall immediately become vacant, by reason of such director's failure to continue to satisfy a qualification requirement after such director's election to the Board of Directors and initial qualification.

Three members of the Board of Directors shall be qualified to serve by virtue of being the President (or other chief executive officer) of the Union and two other individuals who are designated by certification of the Executive Committee (or other executive person or body functioning as its successor) of the Union (collectively, the "Union Directors"). As used in this Certificate of Incorporation, "Union" means the recognized collective bargaining agent of the hourly employees at the Corporation's Irvine, PA facility.

Three members of the Board of Directors shall be qualified to serve by virtue of being the President (or other chief executive officer) of the Corporation and two other individuals who are designated by certification of such President (collectively, the "Management Directors").

Three members of the Board of Directors shall be qualified to serve by virtue of being individuals who are not employees of the Corporation (or its wholly-owned subsidiary National Forge Company, a Pennsylvania corporation ("NFC")) or members of the Union (collectively, the "Independent Directors"). No nomination of any candidate for election by stockholders as an Independent Director shall be eligible for consideration unless a written statement setting forth such candidate's name, qualifications and background is delivered to the Nominating Committee of the Board of Directors (or if no such committee is then constituted, then to the Board of Directors) not less than forty (40) days before the annual or special meeting at which an election for directors is to occur, or, if notice of the annual or special meeting is given less than fifty (50) days before the meeting, no more than ten (10) days after the announcement. The Nominating Committee (or if no such Committee is constituted, then the Board of Directors) shall certify only such number of candidates for election as Independent Directors as there are open Independent Director positions.

Each class shall consist of not more than one Union Director, one Management Director and one Independent Director.

No director need be a stockholder of the Corporation.

- 18 -

P26

The names, categories of qualifications and business addresses of those persons of each class to serve on the Board of Directors commencing on the effective date hereof shall be as follows:

Class I:  Term of office expiring at 1996 annual meeting of stockholders:

| Name | Category of Qualification | Business Address |
|------|---------------------------|------------------|
| E. Roger Clark | Management | National Forge Company<br>One Front Street<br>Irvine, PA 16329 |
| To be named | Independent | |
| Harry D. Walters | Union | National Forge Company<br>One Front Street<br>Irvine, PA 16329 |

Class II: Term of office expiring at 1997 annual meeting of stockholders:

| Name | Category of Qualification | Business Address |
|------|---------------------------|------------------|
| Ashok K. Khare | Management | National Forge Company<br>One Front Street<br>Irvine, PA 16329 |
| John G. Koedel, Jr. | Independent | P.O. Box 877<br>Route 630<br>Deltaville, VA 23043 |
| Dennis L. Peterson | Union | National Forge Company<br>One Front Street<br>Irvine, PA 16329 |

P27

Class III: Term of office expiring at 1998 annual meeting of stockholders:

| Name | Category of Qualification | Business Address |
|------|---------------------------|------------------|
| David A. McCabe | Management | Shearman & Sterling<br>599 Lexington Ave.<br>New York, NY 10022-6069 |
| Charles C. Judd | Independent | 80 Big Oak Road<br>Stamford, CT 06903 |
| Randy M. Abplanalp | Union | National Forge Company<br>One Front Street<br>Irvine, PA 16329 |

Subject to the foregoing and to the requirement set forth above that each director shall at all times satisfy the qualifications to be a director described herein for the particular category pursuant to which they were elected to be a director, at each annual meeting of stockholders the successors to the class of directors whose term shall then expire shall be elected to hold office for a term expiring at the third succeeding annual meeting and thereafter until their successors shall be duly elected and qualified.

Subject to the rights, if any, of the holders of any shares of any series of Preferred Stock then outstanding, any vacancy occurring in the Board of Directors, whether from death, resignation, retirement, disqualification, removal from office or other cause, shall be filled from among eligible candidates of the same category (i.e., Union, Management or Independent candidates) as held the vacant seat immediately prior to the vacancy, solely by the concurring vote of a majority of the directors then in office, whether or not a quorum, and any director so chosen shall hold office for the remainder of the full term of the class of directors in which the vacancy occurred and until such director's successor shall have been duly elected and qualified (so long as such director remains qualified).

No director may be removed except for cause and then only by an affirmative vote of at least two-thirds of the votes of all outstanding shares of stock of the Corporation entitled to vote at any annual meeting of stockholders or any special meeting of stockholders called for such purpose by a majority of the entire Board of Directors or by a written request of a majority of the votes of all outstanding shares of stock of the Corporation entitled to vote. If cause exists for removal of a director, the Board may, but shall not be required to, call a

- 20 -

special meeting of shareholders for the purpose of a vote on removal of the director. At least thirty (30), but not more than sixty (60) days prior to such meeting of stockholders, written notice shall be sent to the director or directors whose removal will be considered at such meeting. Upon such affirmative vote to remove any director, the office of such removed director shall immediately become vacant. As used in this paragraph, "cause" shall include:

1.  Any breach of the fiduciary duty owed by a director to the Corporation;

2.  Any conviction of (or a plea of no contest with respect to a charge of having committed) a felony or a misdemeanor involving moral turpitude;

3.  Any failure by a director to disclose to the Corporation any conflict of interest;

4.  Any acceptance by a director of a position as a director or employee of a competitor of the Corporation without Board approval; and

5.  Any failure to attend six consecutive meetings of the Board of Directors and any Board Committee of which a director is a member.

Any vacancy on the Board of Directors due to death, disability, resignation, removal or other cause shall be filled as promptly as practicable with a candidate having the same qualifications as the terminated Director by vote of a majority of the remaining directors. Such Director shall serve for the remaining unexpired term of the terminated Director.

SIXTH. _By-laws_. Except as otherwise provided in Article TENTH, the By-laws of the Corporation may be altered, amended or repealed by the affirmative vote of a majority of the whole Board of Directors at any regular or special meeting duly convened after notice of that purpose, subject always to the power of the stockholders to adopt, amend or repeal the by-laws.

SEVENTH. _Amendment_. The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute, provided such amendment, alteration, change or repeal is (a) approved by the affirmative vote of eighty (80%) percent of the votes cast at an annual or special meeting of the stockholders with all shares voting as a single class and (b) authorized in accordance with the provisions of Article TENTH or ELEVENTH, if applicable. All rights conferred upon stockholders, directors and officers herein are granted subject to this reservation.

- 21 -

EIGHTH. <u>Stockholder Action</u>. No corporate action may be taken by stockholders at any time other than at the annual meeting or at a special meeting. Except as set forth in Article FIFTH (regarding special meetings called for the purpose of removing a director), special meetings may be called by the officer designated as the President of the Corporation, the President of the Union, any three members of the Board of Directors or upon the written request of a majority of the votes of all outstanding shares of stock of the Corporation entitled to vote, in accordance with the procedures set forth in the By-laws.

Meetings of stockholders shall be held within the Commonwealth of Pennsylvania. The books of the Corporation shall be kept in the Commonwealth of Pennsylvania at such place or places as may be from time to time designated by the Board of Directors or in the By-laws of the Corporation. Election of directors need not be by ballot unless the By-laws of the Corporation shall so provide.

NINTH. <u>Limitation on Liability; Indemnification</u>. No director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such elimination from liability thereof is not permitted under the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended. Any modification or repeal of any provision of this Article NINTH shall not adversely affect any right or protection of a director of the Corporation existing hereunder with respect to any act or omission occurring prior to such modification or repeal.

The Corporation shall indemnify and hold harmless, to the fullest extent now or hereafter permitted by law, each director or officer (including each former director or former officer) of the Corporation who was or is made a party to or witness in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative by reason of the fact that he is or was an authorized representative of the Corporation, against all expenses (including attorneys' fees and disbursements), judgments, fines (including, but not limited to, excise taxes and penalties) and amounts paid in settlement actually and reasonably incurred by him or her in connection with such action, suit or proceeding; provided, however, that the Corporation shall indemnify and hold harmless each director or officer of the Corporation in connection with any proceeding initiated by such director or officer only if the proceeding was authorized by the Board of Directors. The Corporation shall pay expenses (including attorneys' fees and disbursements) incurred by any such director or officer of the Corporation in defending or appearing as a witness in any such action, suit or proceeding in advance of the final disposition of such action, suit or

- 22 -

P30

proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay all such amounts if it shall ultimately be determined that he or she is not entitled to be indemnified under this Article NINTH or otherwise. Any modification or repeal of any provision of this Article NINTH shall not adversely affect any right or protection of a director or officer of the Corporation existing hereunder with respect to any act or omission occurring prior to such modification or repeal.

Any indemnification under this Article NINTH shall be made by the Corporation to the fullest extent permissible under the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended. If a claim for indemnification or payment of expenses under this Article NINTH is not paid in full within ninety (90) days after a written claim therefor has been received by the Corporation, the claimant may file suit to recover the unpaid amount of such claim, and the Corporation shall have the burden of proving that the claimant was not entitled to the requested indemnification or payment of expenses under applicable law.

The rights provided by, or granted pursuant to, this Article NINTH shall not be deemed exclusive of any other rights to which any director or officer seeking indemnification or advancement of expenses may be entitled under any statute, provision of this Certificate of Incorporation, by-law, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in such director's or officer's official capacity and as to action in another capacity while holding such office or position, and shall continue as to any director or officer of the Corporation who has ceased to be a director or officer of the Corporation and shall inure to the benefit of the heirs, executors and administrators of such director or officer.

For the purposes of this Article NINTH, the term "authorized representative" shall mean a director, officer, employee or agent of the Corporation or of any subsidiary of the Corporation, or a trustee, custodian, administrator, committeeman or fiduciary of any employee benefit plan established and maintained by the Corporation or by any subsidiary of the Corporation, or a person who is or was serving another corporation, partnership, joint venture, trust or other enterprise in any of the foregoing capacities at the request of the Corporation.

In addition to any requirement of law or any other provision of this Certificate of Incorporation, the affirmative vote of the holders of 90% or more of the voting power of the then outstanding stock of the Corporation entitled to vote thereon, voting together as a single class, shall be required to

- 23 -

P31

amend or repeal this Article NINTH.  Any such amendment or repeal
shall be effective prospectively only and shall not adversely
alter any right or protection of a director or officer or his or
her heirs, executors or administrators existing under this
Article NINTH with respect to any act or omission occurring prior
to such amendment or repeal.

TENTH.  Notwithstanding any other provision of this
Certificate of Incorporation and except as provisions of
applicable law require a higher percentage, in addition to any
requirement of law, the following transactions shall require for
their approval the favorable vote of a majority of the entire
Board of Directors (which majority shall include at least one
Management Director, one Union Director and one Independent
Director) and a majority of the votes of each class or series of
stock of the corporation, voting as a separate class (except that
the Series A Preferred Stock will vote with the Class B Stock):

Any amendment or alteration to this Certificate of
Incorporation or the By-laws of the Corporation which would:
(i) amend or alter the provisions of Article FOURTH A.2.1(b);
(ii) amend, alter, change, limit, modify, repeal or affect in any
way any provision of the Certificate of Incorporation or of the
By-laws relating to the qualifications for being a member of the
Board of Directors, the classification of the Board of Directors,
the nomination procedures relating to the Independent Directors
or the number of members constituting the entire Board of
Directors; or (iii) amend, alter, change or repeal any of the
provisions of this Article TENTH.

ELEVENTH.  (a)  Notwithstanding any other provision of
this Certificate of Incorporation, the following transactions
shall require for their approval the favorable votes of not less
than sixty-six percent (66%) of the votes of all outstanding
shares of stock of the Corporation entitled to vote:

(i)  the merger or consolidation of the Corporation
or NFC with or into one or more corporations or other entities
wherein the agreement of merger or consolidation, as the case may
be, is required by the laws of the State of Delaware or any other
jurisdiction to be submitted to the stockholders of the
Corporation for their approval;

(ii)  the sale, lease, exchange, transfer or other
disposition of assets representing more than 40% of the value of
the Corporation or NFC, excluding any sale or other disposition
of obsolete equipment or inventory, with the value of the
Corporation or NFC, as the case may be, for such purposes being
the sum of the equity value of the Corporation or NFC, as the
case may be, according to the most recent ESOP valuation plus the
amount of the Corporation's or NFC's, as the case may be, long-
term debt plus the current portion of the Corporation's or NFC's,

- 24 -

as the case may be, long-term debt as of the end of the most recently ended fiscal year determined in accordance with generally accepted accounting principles consistently applied;

(iii)   the liquidation, dissolution or winding up of the Corporation or NFC;

(iv)   any increase in the authorized capital of the Corporation (except for any increase which is required in connection with the offer and sale or issuance of the Corporation's capital stock to the ESOP); or

(v)   any acquisition of another company, whether by asset purchase or purchase of all of the outstanding stock thereof, for a price exceeding 40% of the value of the Corporation or NFC, as the case may be, with the value of the Corporation or NFC, as the case may be, for such purposes being the sum of the equity value of the Corporation or NFC, as the case may be, according to the most recent ESOP valuation plus the amount of the Corporation's or NFC's, as the case may be, long-term debt plus the current portion of the Corporation's or NFC's, as the case may be, long-term debt as of the end of the most recently ended fiscal year determined in accordance with generally accepted accounting principles consistently applied.

(b)   In connection with its determination whether the Corporation shall engage in any of the transactions described in paragraph (a) of this Article ELEVENTH, the Board of Directors of the Corporation shall, subject to any other requirement of law as to its fiduciary duties to the Corporation and its stockholders, consider in addition to any value from a financial point of view proposed to be provided to stockholders the interests of the Corporation's employees and of each community and the economies of the city, surrounding area and state, in which the Corporation has substantial operations.

TWELFTH.   This Corporation has been established to have a majority of its stock owned by employees through an ESOP. Employee ownership will be a valued aspect of the company's culture which is expected to contribute to its success by assuring that the profits achieved by the work, creativity and loyalty of its employees are used for the benefit of the employee-owners.   To this end, it is intended that the company will continue as a majority employee-owned company.   The Board of Directors may, in its discretion, take any appropriate actions to preserve employee ownership, but shall not be required to take any such action.