Exhibit B
Presentation to
National Forge Company Holdings, Inc.'s Board of Directors

**National Forge Company Holdings, Inc.**
**S Corporation**
**December 22, 1998**

Presentation to Board of Directors

TABLE OF CONTENTS

INTRODUCTION .......... 1

TAXES PAID/PROJECTED TAXES .......... 2

DEFINITION OF S CORPORATION .......... 3

REQUIREMENTS OF AN S CORPORATION .......... 3

ADVANTAGES OF S CORPORATION .......... 4

DISADVANTAGES OF AN S CORPORATION .......... 4

WHY NOW FOR BECOMING AN S CORPORATION .......... 5

NEW DISTRIBUTION RULES .......... 5

MAURICE J. CASHMAN MEMO TO E. ROGER CLARK .......... 6

STOCK VALUE CHART .......... 8

PROCESS FOR S CORPORATION ELECTION .......... 9

PROPOSED CORPORATE RESOLUTION FOR BOARD OF DIRECTORS OF NATIONAL FORGE COMPANY HOLDINGS, INC. .......... 10

LETTER FROM MICHAEL A. HART, KIRKPATRICK & LOCKHART LLP .......... 14

LETTER FROM DAVID WINSKO, PRICEWATERHOUSECOOPERS LLP .......... 16

ADDING S CORPORATION STATUS TO ESOP SPELLS TAX RELIEF .......... 18

S CORPORATION ESOPS – NEW ESOPS INCENTIVES IN THE 1997 TAX ACT .......... 25

ESOPS FOR S CORPORATIONS .......... 29

S CORPORATIONS AND ESOPS .......... 39

ASSOCIATION SURPRISED BY S CORP. SURVEY .......... 41

AMSTED CONSIDERS CHANGE IN CORPORATE STRUCTURE TO GAIN TAX SAVINGS .......... 43

# Introduction

## S Corporation

The ability of an ESOP Company electing the S Corporation tax status started officially on January 1, 1998. Prior to that date, I had been reading various articles on the subject and talking to a number of National Forge Company's advisors as well as other professionals. An S Corporation does not pay any corporate income taxes, but the individual shareholders pay taxes on the corporate profits based on their individual income tax rates per their percentage of ownership within the company.

The biggest stumbling block that I have incurred in order to be able to convert to an S Corporation is that an IRA cannot be a shareholder. All but one of our hard dollar investors has an IRA as the method in which they bought their stock in National Forge Company Holdings, Inc. These investors would need to be bought out in order to become an S Corporation.

The apparent benefit of an S Corporation in a 100% owned company by an ESOP became very attractive because no federal or Pennsylvania State Income Taxes would need to be paid. In other words the ESOP Company would become tax exempt and all of this cash would remain in the company for additional repayment of debt and/or capital expenditures. In fiscal years of 1996 and 1997, National Forge Company Holdings, Inc. paid $3,748,000 in taxes. (See following page for additional information.)

The details of an S Corporation as they relate to National Forge Company Holdings, Inc. and the increase in stock value follow in this report. I believe that after reading these materials and gaining a better understanding of the subject material, you too will find it most inviting from an economic standpoint.

MJC/pdc

## Taxes Paid/Projected Taxes

### National Forge Company Holdings, Inc.
### Total Domestic Income Taxes

| | (000s Omitted) |
|---|---|
| Actual FY 1996 | $2,139 |
| Actual FY 1997 | $1,609 |
| Preliminary FY 1998 | $600 |
| Projected Bank Plan FY 1999 | $248 |
| Projected Bank Plan FY 2000 | $387 |
| Projected Bank Plan FY 2001 | $1,545 |
| Projected Bank Plan FY 2002 | $1,435 |
| Projected Bank Plan FY 2003 | $1,302 |

## Definition of S Corporation

- An S Corporation is not subject to federal income tax. Instead, the shareholders of the corporation are subject to tax on the corporation's income, whether it is distributed to them as dividends or retained in the corporation. An important tax advantage of this treatment is that only one tax is imposed on the earnings of the S Corporation.

- When National Forge Company Holdings, Inc. becomes 100% owned by the ESOP Trust, then no Federal and Pennsylvania Corporate Income Taxes need to be paid by the ESOP Trust or the participants within the ESOP Trust. The ESOP participant, upon retirement, will take a distribution in cash when eligible. That cash can be put into an IRA on a tax deferred basis or the taxes can be paid in the year of distribution as ordinary income.

## Requirements of an S Corporation

- The corporation may not have more than 75 shareholders.

- All shareholders must be US citizens or US residents, and they must be natural persons, estates, or certain types of trusts (including, effective as of January 1, 1998, employee benefit trusts).

- The corporation may have only one class of stock outstanding. However, different voting rights are permitted for different shares of stock.

## Advantages of S Corporation

- S Corporation form allows most corporate earnings to escape federal income tax at the corporate level.

- In addition to avoiding tax at the corporate level, S Corporation pro rata share of income attributable to ESOP shares avoid taxation at the individual level until they are actually distributed to ESOP participants. The ESOP participant, upon retirement, will take a distribution in cash when eligible. That cash can be put into an IRA on a tax deferred basis or the taxes can be paid in the year of distribution as ordinary income.

- Potential increase in stock value due to increased cash flow.

- An ESOP Trust counts as one shareholder.

## Disadvantages of an S Corporation

- Section 1042 benefit is not available to S Corporation shareholders. Section 1042 allows tax deferral (by rollover treatment) on the sale of qualified employer securities to an ESOP if qualified replacement property is acquired within a specified time period.

- Generally, built-in gains existent at the time of conversion to S status are taxed at the corporate level if underlying assets are sold within ten years of conversion.

- Generally, LIFO recapture existent at the time of conversion to S status is taxed at the corporate level. National Forge would have to pay approximately $1,000,000 in taxes payable over four years at $250,000 per year.

- S Corporation restricts flexibility with respect to number and type of shareholders and classes and availability of stock. Only one class of stock is permitted.

- Losses can't be carried over and/or back to other taxable years.

- Limited to 75 shareholders.

## Why Now For Becoming an S Corporation

- Effective January 1, 1998, Corporations, which sponsor employee stock ownership plans, become eligible for the first time to make the election to be treated as an S Corporation for federal income tax purposes.

- The Small Business Job Protection Act of 1996 brought about this change. This act provided that an ESOP would be treated as a single shareholder, rather that providing that each participant in the plan would be treated as a shareholder. However, the 1996 Act contained a number of additional provisions that substantially diminished the attractiveness of an ESOP for an S Corporation. Some of these limitations were removed by the Taxpayer Relief Act of 1997.

- Our outside advisors want us to act now in order to take advantage of any tax savings. Also the tax law may change in the future and thereby prevent National Forge Company Holdings, Inc. from becoming an S Corporation.

## New Distribution Rules

- Generally, participants in an ESOP are entitled to demand that their benefits be distributed to them in the form of stock of the sponsoring employer. This raises the possibility of an involuntary termination of an S election made by an ESOP company. This could arise in either of two ways. First, a participant might request that the shares of employer stock allocated to his or her account be rolled over to an IRA. An IRA is not eligible to own shares of an S corporation. Second, over time, if enough participants in the plan elect to take benefits in the form of employer shares, the 75 shareholder limit might be exceeded. These problems have been resolved by the Taxpayer Relief Act of 1997, which permits an S Corporation that sponsors an ESOP to require the participants in the plan to take their benefits in the form of cash. National Forge will need to change to the new distribution rules, as our plan now allows for a distribution of stock and/or cash to the individual.

Maurice J. Cashman Memo to E. Roger Clark

# NATIONAL FORGE COMPANY®
Employee Owned

## Memorandum

December 9, 1998

TO:     E. Roger Clark

FROM:     Maurice J. Cashman

RE:     **S Corporations**

      In order to evaluate the economic potential for National Forge Company to become an S Corporation, I had Valuemetrics, Inc. perform two different Valuations. I used the FY 1998 year end valuation forecast (the blue line on the enclosed graph) and changed this forecast model from a C corporation to an S Corporation (the red line on the enclosed graph).

      The new forecast of being an S Corporation includes the assumptions of borrowing $5,887,000 and using $387,000 in cash to repurchase all hard dollar investors. All deferred taxes were written off, as well as paying $1,000,000 of LIFO recapture taxes over a four-year period of time at $250,000 per year. This shows a negligible increase in value for the initial year ($49.42 [C Corp] vs. $49.51 [S Corp]).

      Although the tax shields of LIFO, NFIP (intellectual property subsidiary) and NF Export are removed, the differential in valuations between the C Corporation and S Corporation grow as a result of the increased cash flow of not paying taxes which more than offset the lost tax shields.

      The S Corporation Fair Market Value is based on the S Corporation being purchased by a third party which would be a C Corporation and would not be able to give full value to an S Corporation's cash flow because of its own tax structure.

      The S Corporation Economic Value (the yellow dots) uses the full cash flow on the basis of not paying any federal income taxes or Pennsylvania Corporate income taxes. This study demonstrates the immediate economic value of an S Corporation of $68.75/share versus $49.42 for a C Corporation.

      You may ask, "Why do the hard dollar investors need to be paid off?" The answer is simply that only one of the hard dollar investors did not use an IRA as his vehicle to invest into National Forge Company Holdings, Inc. An IRA is not allowed to be a shareholder in the

S Corporation. I have talked to a number of professionals around the country, and each one has told me that these investors must be paid out and there is no other alternative.

For companies where the ESOP owns all of the outstanding shares, such as National Forge Company Holdings, Inc., the opportunity for the tax deferral will be and is very appealing.

In order to purchase National Forge Company, we put an ESOP trust together, put in an initial equity from the hard dollar investors and preferred stock issued from the seller, and granted warrants to the lenders. We have repurchased the preferred stock and warrants in April, 1998. Now to take advantage of being an S Corporation and becoming a 100% ESOP owned company, we must repurchase the hard dollar investors' shares of stock.

I not only make this recommendation as the Chief Financial Officer of National Forge Company Holdings, Inc., but also as ~~the~~ a Trustee of the ESOP Trust. The facts and circumstances warrant this action as demonstrated by the Valuemetrics valuation of National Forge Company Holdings, Inc. as an S Corporation being more valuable to its shareholder -- The ESOP Trust.

MJC/pdc

| | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|---|---|
| C Corp Today | 31.5 | 42.73 | 49.42 | 56.39 | 63.38 | 70.1 | 77.04 |
| S Corp Fair Market | | | 49.51 | 57.48 | 68.59 | 78.74 | 89.97 |
| S Corp Economic | | | 68.75 | 78.27 | 88.37 | 100.14 | 113.48 |

## Process for S Corporation Election

On Monday, December 14, 1998, Roger Clark, Robert Kaemmerer and Maurice Cashman met with Kathleen Hendrickson, Charles Smith and Michael Hart of Kirkpatrick & Lockhart to discuss the legal process of becoming an S Corporation.

The initial step in the procedure would be to have the Board of Directors of the National Forge Company Holdings, Inc. pass a resolution that would allow the Company to do the following:

1. Make an offer to buy out all of the hard dollar investors at $49.42/share. If the buyout offer would be unsuccessful to all of the Class B Stockholders, then those who do not elect to participate can be cashed out through a squeeze-out merger.

2. Permit the borrowing of up to $6,000,000 from a financial institution to buy out the hard dollar investors (Class B shares).

3. Amend the Employee Stock Ownership Plan to eliminate the right of ESOP participants to demand distribution in the form of National Forge Company Holdings, Inc. stock. Therefore, participants would receive cash and/or a note at the time of distribution.

4. File an S Corporation election form with the IRS after the Class B Shareholders are paid out.

After the Board of Directors' approval process, the ESOP Trustees will need to:

1. Amend the Employee Stock Ownership Plan in the same form as the Board of Directors.

2. File an S Corporation election form with the IRS after the Class B Shareholders are paid out.

Financing will have to be approved from a financial institution. This will be followed by a redemption offer to the hard dollar investors for $49.42/share. If the redemption offer is not approved unanimously, then those who do not elect to participate can be cashed out through a squeeze-out merger.

The funding from the financial institution would be finalized and the Class B Shares would be redeemed.

The S Corporation will make a filing with the IRS electing its tax year to be July 1 through June 30. The first full year of an S Corporation would commence July 1, 1999.

## Proposed Corporate Resolution for Board of Directors of National Forge Company Holdings, Inc.

WHEREAS, pursuant to the Small Business Job Protection Act of 1996 and the Taxpayer Relief Act of 1997, employee stock ownership plans are permitted to be shareholders in corporations taxed under Subchapter S of the Internal Revenue Code of 1986, as amended ("Subchapter S Corporations"); and

WHEREAS, senior management, in consultation with PricewaterhouseCoopers LLC, the Company's professional accounting firm; Kirkpatrick & Lockhart LLP, the Company's legal counsel; and Valumetrics, Inc., the Company's professional valuation advisor (collectively, the Company's "Professional Advisors"), has studied the financial, tax and other implications of causing the Company to elect to be taxed as a Subchapter S Corporation, including the requirements that a Subchapter S Corporation have no more than one class of outstanding stock and no more than 75 shareholders; and

WHEREAS, the Board of Directors of the Company has considered the results of that study and the advice of the Company's Professional Advisors and considers it to be prudent and in the best interests of the Company, its shareholders, and its employees to:

(i) redeem or cash out through a merger the shares of Class B Common Stock of the Company held by certain management shareholders (individually or through their individual retirement accounts) (the "Management Shareholders") so that, following such redemption or merger, the National Forge Company Holdings, Inc. Employee Stock Ownership Plan (the "ESOP") would be the sole shareholder of the Company;

(ii) borrow funds sufficient to enable the Company to complete the redemption or merger;

 (iii) amend the ESOP to provide that distributions from the ESOP to participants therein may be made only in the form of cash and not in the form of Company stock; and

 (iv) cause the Company to elect to be taxed as a Subchapter S Corporation.

NOW, THEREFORE, IT IS HEREBY

RESOLVED, that the President and Chief Executive Officer of the Company and the Vice President, Chief Financial Officer and Secretary of the Company (the "Designated Officers") are each authorized, on behalf of the Company, to offer to redeem from the Management Shareholders, the shares of Class B Common Stock of the Company held by such Management Shareholders and/or their individual retirement accounts, on such terms and conditions as the Designated Officers may deem appropriate (the "Redemption Offer") (such Redemption Offer to be conclusively evidenced by the execution and delivery of the offering materials); provided, however, that such Redemption Offer shall be conditioned upon (i) (a) acceptance of the Redemption Offer by all Management Shareholders and in respect of all outstanding shares of Class B Common Stock of the Company ("Unanimous Acceptance"), or (b) in the absence of Unanimous Acceptance, approval by the Company's shareholders of a merger of the Company as hereinafter described (the "Merger"), and (ii) obtaining all necessary consents to the foregoing redemption and/or the Merger.

FURTHER RESOLVED, that in the event of a Unanimous Acceptance of the Redemption Offer, the Designated Officers are hereby authorized and directed, on behalf of the Company, to redeem the shares of Class B Common Stock held by the Management Shareholders and/or their individual retirement accounts pursuant to the terms and conditions of the Redemption Offer.

FURTHER RESOLVED, that in the event of less than Unanimous Acceptance of the Redemption Offer, each Designated Officer is hereby authorized and directed, on behalf of the Company, to take any and all actions necessary or appropriate to effectuate a merger of the Company with another corporation (organized and established by one or both of the Designated

Officers), with the Company designated as the surviving corporation (the "Merger"), for the sole purpose of (i) causing each outstanding share of Class B Common Stock of the Company to be exchanged for an amount of cash equal to the fair value of such Class B Common Stock, and (ii) causing all of the outstanding shares of Class A Common Stock of the Company to be exchanged for shares of the surviving corporation.

FURTHER RESOLVED, that each Designated Officer is hereby authorized and directed to borrow, on behalf of the Company, from Chase Manhattan Bank or another reputable lender, on terms and conditions deemed advisable by either or both of such Designated Officers, funds sufficient to enable the Company to complete the Redemption Offer and/or Merger (such borrowing to be conclusively evidenced by the execution and delivery of a promissory note) and to obtain from Chase Manhattan Bank such approvals of or consents to the Redemption Offer and/or Merger and Subchapter S Corporation election, and any such other approvals or consents, as the Designated Officers may determine to be necessary or advisable.

FURTHER RESOLVED, that, conditioned upon the consummation of the Redemption Offer and/or the Merger, each of the Designated Officers is hereby authorized and directed, on behalf of the Company, to (i) file Form 2553 with the Internal Revenue Service, designating thereon a July 1 to June 30 tax year, effective for the tax year beginning July 1, 1999, and to obtain necessary shareholder consents in connection therewith, on or before the due date for such filing, and (ii) complete such other filings, make such other elections and take such other actions in connection with the federal income tax status of the Company's direct and indirect subsidiaries as such Designated Officer may deem to be necessary or appropriate.

FURTHER RESOLVED, that each of the Designated Officers is hereby authorized and directed, on behalf of the Company, to amend the ESOP to provide that distributions from the ESOP to ESOP participants shall be made only in the form of cash and may not be made in the form of Company stock (such amendment to be conclusively evidenced by the execution and delivery of an amendment to the ESOP).

FURTHER RESOLVED, that each of the Designated Officers is hereby authorized and directed, on behalf of the Company, to execute and deliver all such documents and instruments and to take or cause to be taken all such further action, as he shall deem necessary or advisable in order to carry into effect the purposes and intent of any and all of the foregoing resolutions.

# MEMORANDUM

**TO:** Maurice J. Cashman (via Fax)

**FROM:** Michael A. Hart

**DATE:** December 9, 1998

**SUBJECT:** Summary of Tax Advantages of S Corporation Election

---

I have attached a one-page summary of the federal income tax advantages and disadvantages of a Subchapter S election for a 100%-owned ESOP company, which, I understand from Kathy Hendrickson, you requested. Please do not hesitate to call me with any comments or questions you may have.

MAH/vlw-p
Enclosure
cc: Kathleen D. Hendrickson

## FEDERAL INCOME TAX ADVANTAGES AND DISADVANTAGES OF A SUBCHAPTER S ELECTION FOR A 100% ESOP-OWNED COMPANY

PRIMARY ADVANTAGE

- Tax-Free Corporate Income: A Subchapter S corporation does not pay federal income tax. Rather, the corporation's income is "passed through" to its shareholders who pay ordinary federal income tax on their pro-rated portions of the income. In a 100% ESOP-owned company, the only shareholder—the ESOP—is tax-exempt; accordingly, 100% of the corporation's income is passed through to a tax-exempt shareholder and no federal income tax is paid with respect to the corporation's income. Unlike other Subchapter S corporations, which must make partial distributions of income to enable their shareholders to pay their pro-rated shares of the corporation's income, the 100% ESOP-owned Subchapter S corporation does not need to make similar distributions to the ESOP. This improves the corporation's cash flow, thereby freeing up cash for other corporate uses, such as capital investment or debt service, all of which, theoretically, improve the value of the corporation's stock. Increases in the value of the corporation's stock increase the value of the benefits that ESOP participants receive under the ESOP when their employment terminates.

POSSIBLE DISADVANTAGES

Although a Subchapter S corporation generally does not pay corporate-level federal income tax, it may be required to pay certain taxes under special circumstances:

- Built-In Gains Tax: A Subchapter S corporation that disposes of any asset during the ten-year period following the conversion to Subchapter S status must pay a "built-in gains" tax. Generally, the tax is determined by reference to the highest marginal corporate income tax rate applicable to a C corporation and the amount of the gain "built into" the asset at the time of the Subchapter S conversion (i.e., the fair market value of the asset at the time of the Subchapter S conversion less the adjusted basis of the asset at that time).

- LIFO Recapture Tax: Corporations that value inventories on the "LIFO" method must pay a LIFO recapture tax upon conversion to a Subchapter S corporation. The tax due is determined by reference to the difference between the value of the corporation's inventory under the LIFO method and the value of the corporation's inventory under the FIFO method at the time of the Subchapter S conversion. The excess is treated as taxable income ratably over the four year period beginning in the last Subchapter C corporation year.

PricewaterhouseCoopers LLP
600 Grant Street
Pittsburgh PA 15219
Telephone (412) 355 6000

December 14, 1998

Mr. Maurice J. Cashman
Chief Financial Officer
National Forge Company Holdings, Inc.
One Front Street
Irvine, Pennsylvania 16329

Dear Maury:

**Re: Election to be taxed as a Subchapter S Corporation**

As we have discussed over the past year, an ESOP company such as National Forge Company is well suited to enjoy substantial income tax benefits if it were to elect to be taxed as a Subchapter S Corporation. S Corporations generally do not pay corporate or Pennsylvania income taxes. Rather, the income is summarized at the corporate level and each shareholder's pro-rata portion of the Company's income is reported to the shareholder for inclusion on its federal and state income tax return. Because an ESOP is a tax-exempt entity for both federal and Pennsylvania purposes, the amount of National Forge Company income allocable to the ESOP would not be subject to current federal and Pennsylvania income tax.

ESOP participants will be taxed on the cash distributions received from the ESOP. Assuming such distributions are received upon normal retirement, the amount received by the ESOP participant would be taxed for federal purposes as retirement income. (Pennsylvania does not currently tax retirement income.)

The federal tax rate applicable to National Forge's annual income is 34%; therefore, the Company currently pays federal income tax of $340,000 per $1 million of taxable income. If the Company were 100% owned by the ESOP, it would not be required to make current federal and Pennsylvania tax payments. Cash that was otherwise used to pay federal and Pennsylvania tax could be retained in the business for other business purposes, such as to pay down debt or fund capital expansion.

However, as we have also discussed, there are currently certain structural impediments that must be overcome to fully enjoy these benefits. These include eliminating ineligible S-Corporation shareholders (e. g. Individual Retirement Accounts) and restructuring certain legal entities that are currently members of the National Forge Company Holdings consolidated group. Furthermore, to the extent there are any eligible non-ESOP shareholders remaining after the S-Corporation election, these shareholders will be required to include their pro-rata share of Company earnings on their individual tax returns, paying tax at the rates applicable to their personal situation. It is common for such shareholders to expect cash distributions from the Company to pay such tax. Since cash distributions must be pro-rata to shareholdings, partial ESOP ownership will not be as effective as complete ESOP ownership to achieve the cash savings discussed above.

Mr. Maurice J. Cashman
Page 2
December 14, 1998

As you can appreciate, the foregoing is a broad summary of the anticipated future tax benefits that may be derived from an ESOP making an S-Corporation election. It does not address issues such as the cost of conversion, federal and state corporate tax that may be applicable to the Company as a result of the conversion, or revisions that may be required to existing plan documents to obtain and preserve these benefits.

I would be happy to provide further information or discuss the merits of proceeding with whomever you desire. Please do not hesitate to call.

Sincerely,

David A. Winsko