IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

In re:

NATIONAL FORGE COMPANY, et al.,

                    Debtor.
-------------------------------------------------------------
OFFICIAL COMMITTEE OF UNSECURED          Civil No. 04-21 Erie
CREDITORS OF NATIONAL FORGE
COMPANY,

                    Plaintiff,

and

OFFICIAL COMMITTEE OF RETIREES
OF NATIONAL FORGE COMPANY,

                    Intervenors,

v.

E. ROGER CLARK, both Individually and as
an Officer and Director of National Forge
Company, et al.,

                    Defendants.

_____

*Brief of Defendants E. Roger Clark, Maurice J. Cashman,
Dana Beyeler and Robert A. Kaemmerer in Reply to the Plaintiff's
and Intervenor's Brief in Opposition to the Defendants' Motion for
Summary Judgment as to Counts I through VII of the Amended Complaint*

                                                   Douglas A. Campbell
                                                   PA I.D. No. 23143
                                                   Erik Sobkiewicz
                                                    PA I.D. No. 56836
                                                    CAMPBELL & LEVINE, LLC
                                                     1700 Grant Building
                                                     Pittsburgh, PA  15219
                                                    Telephone:  (412) 261-0310
                                                     Counsel for Defendants E. Roger
                                                     Clark, Maurice J. Cashman, Dana
                                                     Beyeler and Robert A. Kaemmerer

TABLE OF CONTENTS

Page

INTRODUCTORY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................. 4

    IF, AS THE COMMITTEES ARGUE, THE TRANSACTIONS
    THAT CULMINATED IN THE REDEMPTION DO NOT
    CONSTITUTE AN INTEGRATED TRANSACTION, THE
    COMMITTEES HAVE FAILED TO STATE A CLAIM
    UNDER BANKRUPTCY CODE § 550(a) ................................................................................ 4

    IN ARGUING THAT BANKRUPTCY CODE § 546(e) DOES
    NOT APPLY TO THE REDEMPTION TRANSACTION, THE
    COMMITTEES ASK THE COURT TO DO NOTHING LESS
    THAN IGNORE THE RULES OF STATUTORY CONSTRUCTION ...................... 7

    THE PRINCIPLES OF EQUITABLE TOLLING
    CANNOT PRESERVE COUNTS IV, V OR VI .......................................................... 9

    THE COMMITTEES HAVE MADE NO MEANINGFUL RESPONSE
    TO THE MOVING DEFENDANTS' CHALLENGE TO COUNT VIII ................... 12

CONCLUSION ............................................................................................................................ 13

TABLE OF AUTHORITIES

## CASES

Page

Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254 (1992) ...................................................... 8

Grand Eagle Cos., Inc. v. ASEA Brown Boveri, Inc., 288 B.R. 484
(Bankr. N.D. Ohio 2004) ............................................................................................................... 8

Kaiser Steel Corp. v. Charles Schwab & Co., 913 F.2d 846 (10th Cir. 1990) ............................... 8

Lamie v. United States Trustee, 540 U.S. 526 (2004) ................................................................... 9

In re Mushroom Transp. Co., 382 F.3d 325 (3d Cir. 2004) .................................................... 10, 11

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994) .............................. 10

PNC Bank v. Housing Mortgage Corp., 899 F.Supp. 1399 (W.D. Pa. 1994) .............................. 10

In re Resorts Int'l, Inc., 181 F.3d 505 (3d Cir.), cert. denied, 528 U.S. 1021 (1999) ................ 8, 9

Saldana v. Kmart Corp., 260 F.3d 228 (3d Cir. 2001) ................................................................... 3

Matter of Udell, 18 F.3d 403 (7th Cir. 1994) ................................................................................. 8

United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) ................................................ 9

## STATUTES

11 U.S.C. § 546 ............................................................................................................................... 8
11 U.S.C. § 546(e) ........................................................................................................ 1, 4, 7, 8, 9
11 U.S.C. § 548(a) .......................................................................................................................... 9
11 U.S.C. § 550(a) ...................................................................................................................... 4, 5
11 U.S.C. § 550(a)(2) .................................................................................................................. 5, 6
12 Pa.C.S.A. § 5104 .................................................................................................................... 6, 9
12 Pa.C.S.A. § 5105 ........................................................................................................................ 6
12 Pa.C.S.A. § 5109 ........................................................................................................................ 6
42 Pa.C.S.A. § 5224(7) ................................................................................................................. 11

## OTHER AUTHORITIES

Fed. R. Civ. P. 15 ........................................................................................................................... 1
Fed. R. Civ. P. 15(c) ...................................................................................................................... 6

INTRODUCTORY STATEMENT

In opposing the motion of the Moving Defendants[1] for summary judgment, the Plaintiff and the Intervenor (collectively, the "Committees") argue five points: (i) that the transfer from NFC to Holdings and the one from Holdings to the Individual Defendants should not be viewed as an integrated transaction; (ii) that the Amended Complaint states a claim against Holdings with respect to the transfer of cash it received from NFC or, even if it doesn't, Fed. R. Civ. P. 15 nevertheless allows the Committees to further amend the Amended Complaint so that it does state a claim against Holdings; (iii) that Bankruptcy Code § 546(e) should not be given its plain meaning so as to bar Counts I, II, III and VII; (iv) that the principles of equitable tolling preserve Counts IV, V and VI; and (v) that Count VIII, notwithstanding that it makes allegations only against Holdings' officers and directors, should not be limited to the actual officers and directors of Holdings. As the Moving Defendants will show below, not one of these arguments comes close to defeating their right to summary judgment. However, before refuting the Committees' legal arguments, the Moving Defendants must respond to a factual assertion made by the Committees that is nothing short of outrageous.

In developing the statement of facts in support of their summary judgment request, the Moving Defendants took great care to substantiate each factual statement they made with references to the appendix and as a result the Court knows that the Committees have in their counterstatement of the facts (a counterstatement utterly devoid of substantiating references) made several factual misstatements. For instance, the Committees state that only the Individual Defendants held the Class B shares, and the Cashman Declaration shows that was not the case. (In fact, the Cashman Declaration shows that the Committees failed to name all of the Class B

---

[1] Defendants Roger Clark, Maurice J. Cashman, Dana Beyeler and Robert A. Kaemmerer will use the same defined terms in this brief as they used in their opening brief.

shareholders as defendants.)  The Committees also tell the Court that NFC *and* Holdings redeemed the Class B shares, and the Court knows that that was not the case; instead, only Holdings redeemed those shares because only it issued them.  The Committees suggest that, in connection with Holdings' redemption of the Class B shares, NFC granted either new or additional liens to the bank defendants, and, once again, the Cashman Declaration refutes that point.  In most instances, the Moving Defendants would have overlooked these mistakes of fact, especially because the record clearly brings these inaccuracies to light.  However, while mistakes like these can be overlooked, what cannot be overlooked is the Committees' unsupported (and unsupportable!) contention that Holdings' decision to redeem the Class B shares was driven by a desire to cash out the Class B shares before Holdings cratered.  According to the Committees:

> The officers and directors of NFC and NFC Holdings devised this scheme to redeem and/or cancel the Class B stock of NFC Holdings solely for their benefit and attempted to justify and legitimize the Stock Cancellation by converting NFC Holdings from a C-Corporation to an S-Corporation.  At the time the Stock Cancellation was approved by the Board of Directors of NFC and/or NFC Holdings and subsequently carried out by the officers of NFC and/or NFC Holdings, the officers and directors of NFC and/or NFC Holdings knew NFC was ailing financially and that there [sic] equity interests were at serious risk.

Committees' Brief in Opposition, p. 4.  These allegations are nothing short of preposterous.

      In the first place, the Committees offer no evidence – *none* – to substantiate their flight of fancy.  The Moving Defendants, on the other hand, have introduced *evidence* as to why Holdings decided to redeem the Class B shares:

> The savings that Holdings could realize by electing Subchapter S status were very real:  according to calculations I prepared for Holdings' board of directors prior to the time it considered whether to elect Subchapter S status, Holdings' federal income tax liability for fiscal years 1998 through 2003 was projected to be $5,517,000.  By electing Subchapter S status, that expense would be eliminated.

2

[Ex. A., Cashman Declaration, ¶ 3.] With the charge that Holdings was "ailing financially" at the time it redeemed the Class B shares, we see again that the Committees are unwilling to let fact get in the way of their spin. That claim is flat out at odds with *evidence* that, in the fiscal year following the year in which the redemption occurred, Holdings' value per share *increased* by $8.61 from $49.42 (the Class B redemption price) to $58.03. [Moving Defendants' Opening Brief, p. 4, n.8; Ex. E, p. 168.] One thing is clear here: if, as the Committees charge, Holdings was "ailing financially," its equity value would not have increased in the year following the redemption.

One last *fact* relegates the Committees' attempt to rewrite what happened here to the historical dustbin. In claiming that Holdings' board redeemed the Class B shares in order to protect the shareholders' investment, the Committees ignore that the board had nine members and that only two of those directors – Defendants E. Roger Clark and Ashok K. Khare – were Class B shareholders. [Ex. A., Cashman Decl., ¶ 9; Ex. F, p. 172.] Of those nine directors, NFC's management and the collective bargaining unit that represented NFC's hourly employees each appointed three members; the remaining three were independent. Thus, for the Committees to assert – again, without a scintilla of evidence – that seven non-shareholder directors acted in concert to protect the Class B shareholders' investment is nothing less than absurd.

The Committees seem to think that supposition is sufficient to defeat a motion for summary judgment. As the Court well knows, that simply is not the case. Rather, the party opposing summary judgment must do more than just rest on mere allegations or vague statements, regardless of how fantastic those allegations or statements may be. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). To challenge the facts offered by the Moving Defendants, the Committees offer nothing but unsubstantiated claims of backroom deals aimed

3

to protect investors in a business the Committees claim was troubled -- but not so troubled that its shareholder equity increased the following year. The Court should view the Committees' allegations for what they are: a desperate attempt to create issues of fact and accord them no weight whatsoever.

The Moving Defendants turn now to the legal arguments raised by the Committees in opposition to the Moving Defendants' summary judgment motion.

ARGUMENT

IF, AS THE COMMITTEES ARGUE, THE TRANSACTIONS THAT
CULMINATED IN THE REDEMPTION DO NOT CONSTITUTE
AN INTEGRATED TRANSACTION, THE COMMITTEES HAVE
<u>FAILED TO STATE A CLAIM UNDER BANKRUPTCY CODE § 550(a)</u>

Even though the record makes it clear that the transfers from NFC to Holdings and from Holdings to the Individual Defendants would not have occurred without the other[2] and even though the Amended Complaint collapses the transaction between NFC and Holdings and the transaction between Holdings and the Individual Defendants into one, the Committees now contend that the redemption transaction was, in fact, two separate transactions. The Committees' about face is not surprising: by now contending that the redemption transaction was not integrated, the Committees believe they defeat the Moving Defendants' argument that the redemption is immune from attack by Bankruptcy Code § 546(e) because that section's protections do not extend to an action brought under § 550(a). It is time for the Committees to make a decision and stick with it: if the redemption was an integrated transaction, § 546(e) bars Counts I, II, III and VII for the reasons stated in the Moving Defendants' opening brief. On the

---

[2] The Committees' statement that "[t]here have been no arguments or evidence presented that could warrant a finding by this Court as a matter of law that the Stock Cancellation is a single integrated transaction," Committees' Brief in Opposition, p. 7, suggests either an unfamiliarity with the record as it actually exists or a misunderstanding of how and why the redemption came to be funded.

4

other hand, if the Committees want to argue that the transactions were not integrated, the Committees cannot as a matter of law recover under § 550(a).

The Committees argue the obvious: that "[i]f the transfer between NFC and NFC Holdings is avoided, then pursuant to Section 550(a)(2) of the Bankruptcy Code, the [Committees are] entitled to recover from the Defendants as immediate or mediate transferees of the avoided transfer." Committees' Brief in Opposition, p. 6. What the Committees do not appreciate, however, is that they have not sought to avoid the transfer from NFC to Holdings. One need only look at the caption of the Amended Complaint: neither NFC nor Holdings is a defendant here. This mistake is hardly surprising in light of how the Committees described the redemption transaction in their original complaint:

> On or about December 22, 1998, the Board of Directors of *NFC* held a special meeting to consider and approve converting from a "C" corporation to an "S" corporation. During the same meeting, the Board of Directors approved the redemption of the Class B common shares (the "Redemption"), the authorization to borrow funds sufficient to complete the Redemption, and the approval to amend the ESOP to limit to cash only distributions from the ESOP.

Committees' Complaint, ¶ 45 (emphasis supplied) [Document No. 1]. The Committees, then, understood the redemption as being between *NFC* and the Individual Defendants, not between *Holdings* and the Individual Defendants. Under that scenario, Holdings did not need to be named as a defendant because it was not a transferee, and even though the Committees amended their original complaint to describe the redemption somewhat more accurately, they still did not name Holdings as a defendant.[3] Thus, if the Committees want to argue against an integrated transaction, the Court must dismiss Counts I, II, III and VII as against the Moving Defendants because the Committees have not brought an action to avoid the initial transfer from NFC to

---

[3] Probably because the Committees treated the transactions between NFC and Holdings and Holdings and the Individual Defendants as integrated.

5

Holdings, and without that requisite transfer, the Moving Defendants can have no liability under Bankruptcy Code § 550(a)(2).

Nor, as the Committees argue, is this just a matter of further amending the Amended Complaint under Fed. R. Civ. P 15(c) to name Holdings as a defendant. First of all, as a condition to the Defendants consenting to the Committees' request to extend the dates previously fixed by the Case Management Plan, the Committees agreed not to seek leave to further amend the Amended Complaint, and the Court entered that revised Case Management Plan on September 22, 2005. Document No. 44, ¶ 3(a) ("The parties shall move to amend their pleading/add new parties within August 15, 2005.") Second, the Committees asked to bring this action on behalf of NFC and Holdings. See Bankruptcy No. 02-10488 (Bankr. W.D. Pa.), Docket No. 703. Having been granted the relief they sought, the Committees cannot now bring an action against a party they now represent. Lastly, even if the first two reasons were not valid, the simple fact is that the Committees cannot bring an action against Holdings because, as the Moving Defendants argue in their Opening Brief, Section 5109 of the Pennsylvania Uniform Fraudulent Transfer Act (the "UFTA") is a statute of repose, not of limitation, and the time to bring an action under § 5104 or 5105 expired at the latest on April 13, 2003 (that is, four years after the transfer from NFC to Holdings). 12 Pa.C.S.A. § 5109.

For their part, the Committees cannot claim that the nature of the redemption transaction was hidden from them so as to preclude them from somehow pursuing Holdings. First, the Committees agreed not to further amend the Amended Complaint *after* the Moving Defendants explained in explicit detail in their first summary judgment brief [Document No. 25] the mechanics of the redemption transaction. If the Committees wanted to name Holdings as a defendant, they could have in their Amended Complaint. But they didn't. The Committees' own

words say it best: "The Amended Complaint did not raise new claims." Committees' Brief in Opposition, p. 10.[4] Not only did the Committees have the benefit of the Moving Defendants' description of the redemption as it actually transpired, the Disclosure Statement that accompanied the Amended Joint Plan of Liquidation for NFC and an affiliate also described the redemption:

> Holdings is a Delaware holding company, wholly owned by an Employee Stock Ownership ("ESOP") Trust. Holdings owns one hundred (100%) of the stock of NFC, a Pennsylvania corporation with its principal plant located in Irvine, Pennsylvania.
> . . .
> In May of 1999, Holdings completed a recapitalization that resulted in the consolidation of all of its equity into a single class of stock, with the ESOP Trust becoming the sole shareholder of Holdings' outstanding shares.

Disclosure Statement in Support of Amended Joint Plan of Liquidation dated November 27, 2002, for National Forge Company and National Forge Components, Inc., Bankruptcy No. 02-10488 (Bankr. W.D. Pa.), Docket No. 461. To be blunt, if the Committees failed to name Holdings as a defendant, that failure can be attributed to no one but them.

Simply put: either the redemption transaction was an integrated one or it wasn't, but under either Bankruptcy Code § 550(a) or § 546(e), Counts I, II, III and VII must be dismissed as to the Moving Defendants.

### IN ARGUING THAT BANKRUPTCY CODE § 546(e) DOES NOT APPLY TO THE REDEMPTION TRANSACTION, THE COMMITTEES ASK THE COURT TO DO NOTHING LESS THAN IGNORE THE RULES OF STATUTORY CONSTRUCTION

In urging the Court to find that Bankruptcy Code § 546(e) does not apply to the redemption transaction, the Committees ask the Court to do nothing less than disregard the first

---

[4] Again, the Committees' change of heart as to the integrated nature of the redemption seems to be motivated solely by a desire to defeat the Moving Defendants' § 546(e) argument.

7

canon – better described as "the large-bore howitzer"[5] – of statutory construction: where the language of a statute is clear in its application, the court must apply its plain meaning as written. As the Supreme Court has repeatedly emphasized, Congress "says in a statute what it means and means in a statute what it says there." Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254 (1992). As the Moving Defendants' opening brief clearly lays out "[w]hat occurred in this case was 'delivery and receipt of funds and securities,'" and that transaction constitutes a settlement payment. Kaiser Steel Corp. v. Charles Schwab & Co., 913 F.2d 846, 850 (10th Cir. 1990) (citation omitted). Moreover, those settlement payments were made "by or to a. . . financial institution." Bankruptcy Code § 546(e). Based on the plain language of § 546(e) then, Counts I, II, III and VII are barred. And while the Committees seek to characterize such a result as "absurd," the fact that the Committees do not like the outcome that a plain reading yields does not render the outcome absurd. In fact, if the protections of § 546 extend to leveraged buyouts, In re Resorts Int'l, Inc., 181 F.3d 505, 515 (3d Cir.), cert. denied, 528 U.S. 1021 (1999) (payment for securities made in conjunction with leveraged buyout is a settlement payment, regardless of whether the clearing agency was involved), there is no reason why, under the plain language of Section 546(e), that provision does not protect the redemption payments at issue here.[6]

As for the Committees' contentions that Grand Eagle Cos., Inc. v. ASEA Brown Boveri, Inc., 288 B.R. 484 (Bankr. N.D. Ohio 2004), and the legislative history of § 546(e) should control the Court's disposition of the Moving Defendants' § 546(e) argument, the Committees sweep under the carpet two points that cannot be ignored. First, Grand Eagle was decided in an

---

[5] Matter of Udell, 18 F.3d 403, 411 n.1 (7th Cir. 1994) ("To refer to this rule as a 'canon' is something of an understatement; it is in fact the large-bore howitzer of statutory construction.").

[6] The Committees also question whether the payments made to redeeming Class B shareholders constitute "settlement payments" under § 546(e) and whether the payments they challenge were made "by or to a . . . financial institution." As to each of these points, the Moving Defendants rely on the arguments they made in their opening brief.

8

appellate vacuum: the Sixth Circuit has not considered the breadth of § 546(e). However, the Third Circuit has, and the logic of Resorts, supra, controls the outcome of this case. As for the argument that the legislative history does not support the Moving Defendants' argument that § 546(e) protects the settlement payments that the Moving Defendants received, that is an argument that the Court cannot even consider. As the Supreme Court admonishes, "when the statute's language is plain, the 'sole function of the court' – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (citations omitted). See also Lamie v. United States Trustee, 540 U.S. 526, 538 (2004) ("Our willingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding.") Because the language of § 546(e) is clear, the Court cannot delve into Congressional intent.[7]

The Moving Defendants are entitled to summary judgment as to Counts I, II, III and VII.

### THE PRINCIPLES OF EQUITABLE TOLLING CANNOT PRESERVE COUNTS IV, V OR VI

The Committees go on at great length discussing both the discovery rule and the concept of equitable tolling; however, in all that discussion they never address why either matters in this case.[8] As the Third Circuit has observed,

> [t]he purpose of the discovery rule is to determine the accrual date of a date, for ultimate purposes of determining, as a legal matter, when the statue of limitations begins to run. Equitable tolling. . . presumes claim accrual. Equitable tolling steps in to toll, or stop,

---

[7] In yet another attempt to defeat the Moving Defendants' motion for summary judgment at any cost, the Committees argue that the Court should equate their claims for intentional fraud under the UFTA to the intentional fraud provision in Bankruptcy Code § 548(a) so that the intentional fraud claims under the UFTA are outside the protections afforded by § 546(e). Again, the plain language canon defeats that argument. Lamie, supra ("[P]etitioner would have us read an absent word into the statute . . . [W]ith a plain, nonabsurd meaning in view, we need not proceed in this way.").

[8] The Committees do not challenge the Moving Defendants' contention that Counts IV and V apply only to Mr. Clark. Thus, the Committees have conceded the point.

9

>	the running of the statute of limitations in light of established
>	equitable considerations.

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1390 (3d Cir. 1994). Here, the alleged wrongdoing of NFC's directors and officers, especially in light of the Committees' allegations that those directors and officers controlled NFC for their own purposes, is imputed to NFC. PNC Bank v. Housing Mortgage Corp., 899 F.Supp. 1399, 1405 (W.D. Pa. 1994) (knowledge of wrongdoing by shareholders that dominated the corporation are imputed to the corporation). Thus, the only real issue is whether the Committees' causes of action in Counts IV, V and VI are subject to equitable tolling. Clearly they are not.

A statute of limitations will be equitably tolled only if the plaintiff can show that it exercised reasonable diligence in ascertaining an injury, In re Mushroom Transp. Co., 382 F.3d 325, 388 (3d Cir. 2004), and it is axiomatic that NFC acted through its board of directors and its officers. The Court will recall that Holdings' and NFC's boards were comprised of the same nine members: three from management, three from NFC's collective bargaining unit and the independents, and no where does the Amended Complaint allege that those six non-management directors were prevented by the management-appointed directors from exercising their fiduciary duties. In absence of such allegations, the Amended Complaint fails to state a claim for equitable tolling for no other reason than any of those six directors could have brought the claims that the Committees now assert in Counts IV, V and VI. In short, the Committees' argument for equitable tolling falls victim to their own complaint.

Even if we assume that the Amended Complaint alleges facts regarding those six board members sufficient to toll NFC's cause of action against its directors and officers, the fact remains that, on November 5, 1999 (that is, after the redemption occurred), Thomas G. Hessley joined Holdings' board, [Ex. A, Cashman Decl., ¶ 10], and as of that date, Mr. Hessley was in a

position to learn the specifics of the redemption.  At the latest, then, the time period for bringing breach of fiduciary duty counts against NFC's directors and officers began to run with Mr. Hessley's appointment.

In response, the Committees suggest that the breach of fiduciary duties claims they assert in Counts IV, V and VI did not begin to run until NFC filed its bankruptcy case:

> the claims and causes of action set forth in [the] Original Complaint and Amended Complaint were not discovered until the Committee made a reasonable inquiry into the matter in mid to late 2002.  Until the filing of the Bankruptcy, there was no reason for creditors or other parties to awaken inquiry and direct diligence into the issues surrounding the Stock Cancellation.

Committees' Brief in Opposition, p. 28.  Unfortunately for the Committees, that is not the test for equitable tolling.  Mushroom Transp. Co., supra.  Here, the causes of action that the Committees assert in Counts IV, V and VI belong to NFC, not to creditors (they are, after all, breach of fiduciary duty claims).  If, as the Committees argue, "[a]t the time the Stock Cancellation was approved by the Board of Directors of NFC and/or NFC Holdings and subsequently carried out by the officers of NFC and/or NFC Holdings, the officers and directors of NFC and/or NFC Holdings knew NFC was ailing financially," Committees' Brief in Opposition, p. 4,  Mr. Hessley was, from the time he joined NFC's board, in a position to discover that injury and bring a claim against the officers and directors of NFC.  At the absolute latest, then, the statute of limitations for bringing fiduciary duty claims against the officers and directors of NFC began to run when Mr. Hessley joined the board and expired two years later.  Even giving the Committees every benefit of every doubt, the outcome here is clear:  Counts IV, V and VI had to be brought, at the latest, within two years of Mr. Hessley's appointment, 42 Pa.C.S.A. § 5524(7).  They were not, and thus they are time-barred.

11

### THE COMMITTEES HAVE MADE NO MEANINGFUL RESPONSE
### TO THE MOVING DEFENDANTS' CHALLENGE TO COUNT VIII

According to the Committees, Count VIII should not be limited to the Individual Defendants that were actually the directors and officers of Holdings because "there is material issues of fact that need to be resolved regarding which board of directors and which officers authorized the Stock Cancellation." Committees' Brief in Opposition, p. 31. Once again, the Committees are grasping. In the first place, there is no question at all as to which board authorized the redemption: it necessarily was Holdings' board because it was Holdings (and only Holdings) that issued the Class B shares. Moreover, because Count VIII alleges breach of fiduciary duty claims under Delaware law, only Holdings' officers and directors could possibly be liable under it. (NFC was a Pennsylvania corporation, not a Delaware corporation). [Ex. A., Cashman Decl., ¶ 2.] As the Committees' own appendix shows, at the time of the Redemption, among the Individual Defendants only Messrs. Clark and Khare were directors of Holdings. However, the Committees have not alleged that Mr. Khare was a director, and as noted earlier, they cannot further amend the Amended Complaint to name him as one. Thus, because Mr. Clark is the only Individual Defendant that was actually named as a director of Holdings and because Holdings' only officers were the Moving Defendants, [Ex. A, Cashman Decl. ¶ 9], Count VIII must be dismissed as against any defendant other than the Moving Defendants.

CONCLUSION

For the reasons set forth in the Moving Defendants' opening brief and in this reply brief, the Court must grant summary judgment to the Moving Defendants as to Counts I through VII of the Amended Complaint.

Dated: November 4, 2005                    Respectfully submitted,


/s/ Erik Sobkiewicz
Douglas A. Campbell
PA I.D. No. 23143
Erik Sobkiewicz
PA I.D. No. 56836
CAMPBELL & LEVINE, LLC
1700 Grant Building
Pittsburgh, PA 15219
Telephone: (412) 261-0310

Counsel for Defendants E. Roger Clark, Maurice J. Cashman, Dana Beyeler and Robert A. Kaemmerer